**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| CHERYL JANKY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 3:05-CV-217-PRC |
| | ) | |
| HENRY FARAG, STREET GOLD | ) | |
| RECORDS, LAKE COUNTY | ) | |
| CONVENTION & VISITORS | ) | |
| BUREAU, Jointly and Severally, | ) | |
| | ) | |
| Defendants. | ) | |

**ORDER**

This matter is before the Court on (1) Defendant Lake County Convention & Visitors Bureau's Motion for Summary Judgment [DE 29], filed by Defendant Lake County Convention & Visitors Bureau ("LCCVB") on July 21, 2005; (2) Plaintiff Cheryl Janky's Motion for Summary Judgment [DE 63], filed by the Plaintiff, Cheryl Janky, on November 9, 2005; and (3) Plaintiff Cheryl Janky's Request to Schedule Oral Argument on Plaintiff's Motion for Summary Judgment [DE 65], filed by Ms. Janky on November 9, 2005.  For the reasons set forth in the body of this Order, the Court grants in part and denies in part Defendant LCCVB's Motion for Summary Judgment and grants in part, denies in part, and denies in part as moot Plaintiff Cheryl Janky's Motion for Summary Judgment.

## PROCEDURAL BACKGROUND

On October 3, 2003, Cheryl Janky filed a Complaint against Henry Farag, Street Gold Records, and LCCVB in the United States District Court for the Eastern District of Michigan. LCCVB filed an Answer on December 8, 2003, and Henry Farag filed an Answer and Counterclaim on January 7, 2004. On January 8, 2004, LCCVB filed an Amended Answer. Ms. Janky filed an Answer to the Counterclaim on February 6, 2004.

On January 16, 2004, Ms. Janky filed a Motion for Summary Judgment in the Eastern District of Michigan. On March 31, 2005, this matter was transferred to the Northern District of Indiana, South Bend Division, pursuant to 28 U.S.C. § 1631. This matter was then transferred to the Hammond Division on June 14, 2005. Ms. Janky's January 16, 2004 Motion for Summary Judgment and all responsive briefing were stricken by District Court Judge James Moody on June 20, 2005.

LCCVB filed its Motion for Summary Judgment in the Northern District of Indiana on July 21, 2005. That same day, the Court held a telephonic scheduling conference and set the deadline for the amendment of pleadings by Ms. Janky for August 1, 2005, and by the Defendants for August 31, 2005. The discovery deadline was set for October 28, 2005, and the dispositive motion deadline was set for November 10, 2005.

On July 28, 2005, the Court entered an Order staying the proceedings against Henry Farag pursuant to an automatic stay in bankruptcy. Later, on October 19, 2005, the Court reaffirmed the stay against Henry Farag and also stayed the matter against Street Gold Records, a sole proprietorship. Ms. Janky has made the Court aware that Mr. Farag received a discharge from the bankruptcy court on December 5, 2005.

2

On August 10, 2005, Ms. Janky filed an Amended Complaint, to which LCCVB filed an objection on August 15, 2005.  On September 9, 2005, Ms. Janky filed a Motion for Leave to File Amended Complaint and a Rule 56 Motion to Strike LCCVB's Motion for Summary Judgment.  On September 19, 2005, LCCVB filed a response to both motions.  On September 12, 2005, the Court ordered that the August 10, 2005 Amended Complaint be stricken from the record, and on October 3, 2005, the Court granted the Motion for Leave to Amend Complaint for the sole purpose of correctly identifying Street Gold Records as a sole proprietorship.

On October 5, 2005, Ms. Janky filed an Amended Complaint for copyright infringement, unfair competition, unjust enrichment, negligence, misappropriation, and an accounting of royalties. LCCVB filed an Answer on October 10, 2005.

On October 19, 2005, the parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On October 21, 2005, Ms. Janky filed a Motion for Leave to File a Second Amended Complaint and a Motion for Extension of Time to File a Response to LCCVB's Motion for Summary Judgment.  Without leave of Court, she filed the Response in Opposition to the Motion for Summary Judgment that same day.  On October 26, 2005, LCCVB filed a response in opposition to both of Ms. Janky's motions.  On December 1, 2005, the Court denied the Motion for Leave to File Second Amended Complaint.

On October 27, 2005, the Court held a hearing during which the Court denied the Motion to Strike the Motion for Summary Judgment, denied the Motion for Extension of Time to File a Response to LCCVB's Motion for Summary Judgment, ordered that the Response to the Motion for

Summary Judgment be stricken, and granted a Motion Requesting Ruling on Motion for Summary Judgment, which had been filed on September 1, 2005, by LCCVB.

On November 8, 2005, LCCVB filed a Motion to Dismiss for Lack of Prosecution. Ms. Janky filed a Response on November 23, 2005, and LCCVB filed a Reply on November 30, 2005. This motion remains pending before the Court.

On November 9, 2005, Ms. Janky filed a Motion for Summary Judgment and a Motion for Oral Argument on Motion for Summary Judgment. LCCVB filed a response to the Motion for Summary Judgment on December 6, 2005, and a response to the Motion for Hearing on November 14, 2005. Ms. Janky filed a Reply in support of her Motion for Summary Judgment on December 23, 2005.

On December 30, 2005, Ms. Janky filed a Motion to Dismiss Counterclaim pursuant to Fed. R. Civ. P. 12(b)(6) and Alternatively Fed. R. Civ. P. 41(b). LCCVB filed a Response on January 5, 2006, and Ms. Janky filed a reply on January 12, 2006. On January 17, 2006, Mr. Farag filed a Response, and on January 18, 2006, Ms. Janky filed a reply. This motion remains pending before the Court.

On February 17, 2006, LCCVB filed a Motion to Compel Mediation to which Ms. Janky filed a response in opposition on March 1, 2006. Having held a motion hearing on March 3, 2006 on the Motion to Compel Mediation and having heard the arguments of the parties, the Court denied the motion.

4

## SUMMARY JUDGMENT STANDARD

The Federal Rules of Civil Procedure mandate that motions for summary judgment be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) further requires the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "[S]ummary judgment is appropriate–in fact, is mandated–where there are no disputed issues of material fact and the movant must prevail as a matter of law. In other words, the record must reveal that no reasonable jury could find for the non-moving party." *Dempsey v. Atchison, Topeka, & Santa Fe Ry. Co.*, 16 F.3d 832, 836 (7th Cir. 1994) (citations and quotation marks omitted).

A party seeking summary judgment bears the initial responsibility of informing a court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party may discharge its "initial responsibility" by simply "'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the non-moving party's case." *Id.* at 325. When the non-moving party would have the burden of proof at trial, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.* at 323, 325; *Green v. Whiteco Indus., Inc.*, 17 F.3d 199, 201 n.3 (7th Cir. 1994); *Fitzpatrick v. Catholic Bishop of Chicago*, 916 F.2d 1254, 1256 (7th Cir. 1990). However, the

5

moving party, if it chooses, may support its motion for summary judgment with affidavits or other materials and thereby shift to the non-moving party the burden of showing that an issue of material fact exists. *Kaszuk v. Bakery & Confectionery Union & Indus. Int'l Pension Fund*, 791 F.2d 548, 558 (7th Cir. 1986); *Bowers v. DeVito*, 686 F.2d 616, 617 (7th Cir. 1982).

Once a properly supported motion for summary judgment is made, the non-moving party cannot resist the motion and withstand summary judgment by merely resting on its pleadings. Fed. R. Civ. P. 56(e); *Donovan v. City of Milwaukee*, 17 F.3d 944, 947 (7th Cir. 1994). Rule 56(e) establishes that "the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-50 (1986). Thus, to demonstrate a genuine issue of fact, the non-moving party must do more than raise some metaphysical doubt as to the material facts; the non-moving party must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

In viewing the facts presented on a motion for summary judgment, a court must construe all facts in a light most favorable to the non-moving party and draw all legitimate inferences in favor of that party. *NLFC, Inc. v. Devcom Mid-Am., Inc.*, 45 F.3d 231, 234 (7th Cir. 1995); *Doe v. R.R. Donnelley & Sons Co.*, 42 F.3d 439, 443 (7th Cir. 1994). A court's role is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact. *Anderson*, 477 U.S. at 249-50; *Doe*, 42 F.3d at 443. When considering cross-motions for summary judgment, "our review of the record requires that we construe all inferences in favor of the party against whom the motion under

6

consideration is made." *Allen v. City of Chicago*, 351 F.3d 306, 311 (7th Cir. 2003) (citations and internal quotation marks omitted).[1]

## MATERIAL FACTS

Cheryl Janky and Henry Farag were members of Stormy Weather, a musical group. At rehearsal one evening, Mr. Farag made an announcement that LCCVB was looking for a song to represent Lake County. No formal rules or parameters for the contents of the song were provided to the group. As a result of that announcement, Ms. Janky wrote the music and lyrics of the song "Wonders of Indiana" a/k/a "Indiana," and on May 6, 1999, without the assistance of counsel, Ms. Janky obtained a copyright for the musical work titled "Wonders of Indiana," (Pau2-397-856), indicating that she was the author.

Subsequently, Henry Farag offered his ideas and suggestions for revising the lyrics of "Wonders of Indiana" in order to comply with LCCVB's requirements. Ms. Janky incorporated the suggestions, which she states constitute a 10% revision of the song's lyrics. Ms. Janky prepared a new copyright registration form for the revised song and signed both her and Mr. Farag's name on the form. On December 16, 1999, Ms. Janky obtained a copyright (Pau2-485-026) for the revised song, "Indiana (Wonders of)," again without the assistance of counsel. On the copyright certificate of registration, Ms. Janky gave herself credit for the music and lyrics and gave Mr. Farag credit for 10% of the lyrics, noting "additional lyrics/(joint work)." Def. Br., Exh. A; Pl. Br, Exh. A-2. Both

---

[1] LCCVB's Motion for Summary Judgment is unopposed as the Court struck Ms. Janky's response as untimely. However, LCCVB filed its Motion for Summary Judgment months prior to the dispositive motion deadline, and Ms. Janky filed her Motion for Summary Judgment prior to the dispositive motion deadline and before the Court had ruled on LCCVB's Motion for Summary Judgment. Although the Court granted LCCVB's Motion Requesting Ruling on Motion for Summary Judgment, as the Court now has both motions before it for consideration, the Court will consider them as cross motions for summary judgment.

Ms. Janky and Mr. Farag are listed on the copyright certificate of registration as copyright claimants. Ms. Janky further indicated on the form that the material added to the work was "additional lyrics to be used in [ ] with original lyrics." *Id.* On an ASCAP application, she gave Mr. Farag ten percent credit.

In a November 9, 2005 Declaration, Ms. Janky states that her intent in including Mr. Farag on the December 16, 1999 copyright registration for the revised song was to indicate her gratitude, to designate credit for the ideas, and to demonstrate that she "appreciated every little bit of support, which is hard to obtain in this industry." Pl. Br.., Exh. E-2, ¶ 6. She explains, "I now understand that the proper way to give a 'thank you' for any de minimis contribution is to give acknowledgment on the album credits and/or liner notes." *Id.* Ms. Janky further states, "I never intended for Mr. Farag to acquire any copyright ownership interest in the song 'Wonders of Indiana' a/k/a 'Indiana' and I did not consider him to be a co-author of the song. Mr. Farag was not present when I originally created the song in early 1999. I created the music for the song 100% on my own. Mr. Farag's contributions to the song were minor and are limited to few suggestions." *Id.*, ¶ 7. She represents that Mr. Farag and she never discussed his intent or desire to share ownership of the song.

Mr. Farag never requested that she include his name on the copyright registration form and claims in his Counterclaim that her act of affixing his name to the copyright registration form has harmed his reputation. He asserts that the registration is a fraudulent document. Mr. Farag has not filed a copyright registration of his own asserting his contribution to the lyrical composition of the revised song.

On July 15, 2003, Ms. Janky, without assistance of counsel, submitted a third copyright registration for the work "Indiana (Wonders of)," listing a "contents title" of "Lake County." She identified only herself as the author of the music, lyrics, and "arrangement performance." Pl. Mem.,

8

Exh. A-3.  On the registration, she acknowledged the May 1999 registration (Pau 2-397-856) as the previous registration, and then indicated that the derivative work was a sound recording based on the Pau 2-397-856 registration.

Street Gold Records released the revised song on the "Doo-It Doo-Wop" album, performed by Stormy Weather, of which both Mr. Farag and Ms. Janky were members.  The CD has a copyright of 2000 and lists Ms. Janky and Mr. Farag as authors of the revised song and Farag Music BMI as the publisher of the revised song.  There is no evidence in the record regarding whether a copyright registration was filed or approved for the "Doo-It Doo-Wop" album that contained the performance of the revised song or for the performance of the revised song individually.

The group Stormy Weather also recorded a video, which included the song *Lake County, Indiana*.  Mr. Farag produced the video.  LCCVB paid for the video and advertised the group in exchange for a non-exclusive license to use the revised song, granted by Mr. Farag to LCCVB.  There are no written agreements between Ms. Janky and Mr. Farag or Street Gold Records regarding the playing or performing of the video.

Ms. Janky states in her January 16, 2004 Declaration that the revised song is also a part of an audio soundtrack used for a twelve-minute video for LCCVB that was being shown at the Welcome Center as well as used on their phone lines as the background music for customers put on hold.  LCCVB also sold copies of the album "Doo-It Doo-Wop" at the Welcome Center.  LCCVB states in its Answer that the revised song no longer appears as part of the audio/video soundtrack being shown at the Welcome Center and is not currently being used as background music for customers placed on hold.

Mr. Farag is the sole owner of Street Gold Records, a sole proprietorship.  He states in his declaration that Street Gold Records was responsible for producing, manufacturing, and marketing the albums recorded by Stormy Weather.

Mr. Farag further states that as owner and/or co-owner of the revised song, he issued a non-exclusive license to LCCVB to play the song in question at the Welcome Center, at functions, in promotional ads, and to individuals who called the Welcome Center and were placed on hold.

He also explains that Farag Music BMI is the publisher of original material created and performed by Stormy Weather and may issue non-exclusive licenses regarding the playing of these works and that Street Gold Records/Farag Music BMI, as the label and publisher of the "Doo It Doo-Wop" album, has the contractual authority to issue non-exclusive licenses for the performance of works recorded by Stormy Weather, including, but not limited to the revised song.  Finally, Mr. Farag states that Street Gold Records/Farag Music BMI, as the label and publisher of "Doo-It Doo-Wop," indeed granted a non-exclusive license to LCCVB to allow the performing of the revised song.

In her 2004 Declaration, Ms. Janky states that Mr. Farag, through his company Street Gold Records, licensed and sold the rights to the revised song to LCCVB without her knowledge, approval, or consent.  She further states, "I notified Lake County Convention and Visitors Bureau and Mr. Farag of their unauthorized usage and violation of my copyrights and they refused to cease their infringement of my copyrights."  Def. Br., Exh. 1; Pl. Br., Exh. E-1, ¶ 9.

Ms. Janky states that she has not received any money from LCCVB or from Mr. Farag.

In a sworn declaration, James Tsismanakis, the current President/CEO of LCCVB, states that LCCVB is a political subdivision as defined in Indiana Code § 34-6-2-110, and, therefore, is a

governmental entity as defined in Indiana Code § 34-6-2-49 subject to the protections of the Indiana Tort Claims Act.

## ANALYSIS

In her Amended Complaint, Ms. Janky alleges that she has a valid copyright in the musical composition "Wonders of Indiana," that Ms. Janky and Mr. Farag did not intend for "Wonders of Indiana" a/k/a "Indiana" to be a joint work, that Ms. Janky composed 100% of the music for the musical composition "Wonders of Indiana," that Ms. Janky composed 90% of the lyrics to the musical composition "Wonders of Indiana," that Mr. Farag made a 10% de minimis contribution to the lyrics, and that LCCVB publicly used, performed, copied, distributed, and sold copies of "Wonders of Indiana" a/k/a "Indiana" without Ms. Janky's authorization as well as without compensating Ms. Janky.  Ms. Janky alleges federal copyright infringement as well as various state common law causes of action.

On all of Ms. Janky's claims, LCCVB seeks summary judgment under the Indiana Tort Claims Act on the basis that Ms. Janky did not serve LCCVB within 180 days of the alleged infringement.  LCCVB also seeks summary judgment on the claim of copyright infringement based on the theory that Defendant Henry Farag was a joint owner with Ms. Janky of the revised song used by LCCVB, that Mr. Farag issued a non-exclusive license to the LCCVB to use the revised song in certain contexts, that Mr. Farag had distribution rights to the revised song, and that Farag gave LCCVB permission to use the revised song.[2]

---

[2] In a footnote to its Brief in Support of Motion for Summary Judgment, LCCVB states that it contends that the revised song was created as a work for hire for LCCVB. Def. Mem., p. 1.  LCCVB goes on to submit that, "If so determined, [LCCVB] would own copyright to the song and, therefore, could not be charged with copyright infringement."  However, at no time in the body of its brief or in its response to Ms. Janky's Motion for Summary Judgment does LCCVB assert that the song was a work for hire, offer any facts supported by evidence that the song was

In her Motion for Summary Judgment, Ms. Janky seeks a ruling from the Court that she has a valid copyright in the revised song, that Mr. Farag was not a joint owner of the revised song, and that LCCVB infringed her copyright.  Ms. Janky argues that the revised song is not a joint work because she and Mr. Farag did not intend to be joint authors, and, therefore, Mr. Farag did not have the authority to grant a non-exclusive license to LCCVB for use of the revised song.  In addition, Ms. Janky argues in response to LCCVB's affirmative defense that the ITCA is inapplicable to the federal copyright claims.

### A.  Copyright Infringement

In order to prevail on a claim of copyright infringement, a plaintiff must prove ownership of a valid copyright, as well as the copying of constituent elements of the work that are original.  *See Feist Pub'ns, Inc. v. Rural Tel. Serv. Co.,* 499 U.S. 340, 361 (1991).  A certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate" in any judicial proceeding.  17 U.S.C. § 401(c); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 207 (7th Cir. 1994).

---

a work for hire, set forth the legal standard for a work for hire, or offer any analysis as to why the song is a work for hire. More importantly, LCCVB devotes its Motion for Summary Judgment and its response to Ms. Janky's motion to arguing that Mr. Farag was a joint author of the song, as evidenced by the December 1999 copyright registration, and thus had the authority to grant LCCVB a license to use the song.  At no time does LCCVB contend that Ms. Janky does not also hold a copyright in the revised song, nor could it as it asserts that Mr. Farag was a joint author with Ms. Janky.  LCCVB cannot maintain the inconsistent positions that on the one hand the song was a work for hire, which would give LCCVB sole ownership of the copyright to the song, and on the other that Mr. Farag and Ms. Janky are joint authors of the song with ownership of the copyright.  *See* 17 U.S.C. § 201(b).  Because LCCVB has not attempted to overcome the presumption of validity of the December 1999 copyright with any evidence that the song was a work for hire, the Court finds that LCCVB has waived its right to assert that the revised song was a work for hire.

*1. Ownership of a Valid Copyright*

In the instant matter, Ms. Janky holds a May 1999 copyright in her original song. However, the revised song, which she alleges LCCVB used without her permission but which LCCVB alleges it had a non-exclusive license to use from Mr. Farag, is the subject of a December 1999 copyright, on which both Ms. Janky and Mr. Farag's names appear.

In its Motion for Summary Judgment, LCCVB argues that Mr. Farag is a joint author of the entire revised song based on the December 1999 copyright registration, citing 17 U.S.C. § 410(c). This position is untenable since Mr. Farag asserts in his Counterclaim, filed in this case on January 7, 2004, that "Cheryl Janky has forged Henry Farag's signature on a copyright form" and this is a "fraudulent document."[3] Accordingly, the December 1999 copyright registration is not prima facie evidence that Mr. Farag holds a valid copyright in the revised song.

In its Motion for Summary Judgment, LCCVB also argues that Mr. Farag is a joint owner of at least ten percent of the revised song based on Ms. Janky's Declaration that Mr. Farag revised ten percent of the lyrics and based on the ASCAP filing and copyright filing. In contrast, in her Motion for Summary Judgment, Ms. Janky asserts that she has a presumption of validity in her copyright of the revised song and that Mr. Farag is not a joint author.

Because Ms. Janky has a valid copyright registration made within the requisite five-year period (the December 1999 copyright), the burden is on LCCVB to show the invalidity of the copyright registration. *Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1065 (7th Cir. 1994). The

---

[3] Paragraph 1 of Mr. Farag's Counterclaim provides:
Cheryl Janky has forged Henry Farag's signature on a copyright form that she submitted in exhibits of her pleadings, thereby harming Henry Farag's reputation. Cheryl Janky submitted this fraudulent document to the Federal Court and to the Library of Congress. Cheryl Janky has also sought copyrights on "Lake County, Indiana" without advising the co-writer, Henry Farag.
Farag Counterclaim, DE 4.

invalidity of a copyright registration can be established by "demonstrat[ing] that the material was copied from another source or disput[ing] the authorship of the material itself." *Id*. In this case, LCCVB challenges the authorship of the revised song by alleging that Mr. Farag is a joint author of the revised song[4] and, therefore, that Mr. Farag had the right to grant a license to LCCVB to play the song.

Pursuant to 17 U.S.C. § 201(a), "[t]he authors of a joint work are co-owners of the copyright in the work." "In a joint work, the joint authors hold undivided interests in a work, despite any differences in each author's contribution. Each author as a co-owner has a right to use or to license the use of the work, subject to an accounting to the other co-owners for any profits. Thus, even a person whose contribution is relatively minor, if accorded joint authorship status, enjoys a significant benefit." *Erickson*, 13 F.3d at 1068 (internal citations omitted).

Accordingly, before an individual such as Mr. Farag can be afforded the benefits of joint ownership, there must be a finding of joint authorship. A "joint work" is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The "statutory language clearly requires that each author intend that their respective contributions be merged into a unitary whole." *Erickson*, 13 F.3d at 1068-69. Contemporaneous input by more than one party alone does not satisfy the intent requirement. *Id*. at 1069.

Even if two individuals collaborate with the intent to create a unitary work, "the product will be considered a 'joint work' only if the collaborators can be considered 'authors.'" *Id*. In the

---

[4] Although LCCVB asserts in its Motion for Summary Judgment that Mr. Farag was a joint author of the revised song with Ms. Janky, at no time does LCCVB articulate the standard for joint authorship. In its response to Ms. Janky's Motion for Summary Judgment, LCCVB does not acknowledge or challenge Ms. Janky's articulation of the requirements of joint authorship.

*Erickson* case, the Seventh Circuit adopted the "copyrightability test" for authorship. *Id*. at 1071. This test requires that the contribution of each collaborator "represent[] original expression that could stand on its own as the subject matter of copyright" and that the parties "must have intended to be joint authors at the time the work was created." *Id*. at 1070 (citing Paul Goldstein, *Copyright: Principles, Law, and Practice* § 4.2.1.2, at 379 (1989)). The rationale behind the test stems from the definition of "joint work" in § 101 as a "work prepared by two or more *authors*," and the term "author" is further defined as "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id*. at 1071 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)). Further, "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id*. (citing 17 U.S.C. § 101).

In summary, the Seventh Circuit has adopted a two-part test for joint authorship. First, the party asserting joint authorship "must show the parties intended to be joint authors at the time the work was created." *Id*. Second, the party "must show that its contributions to the works were independently copyrightable." *Id*.

As to intent, Ms. Janky has offered evidence that there was no intent by Mr. Farag and her to be joint authors. Initially, Ms. Janky completed the song "Wonders of Indiana," having composed 100% of the music and lyrics; Mr. Farag was not present at the time she created the original work. Subsequently, Mr. Farag made suggestions to revise approximately 10% of the lyrics of the song, which Ms. Janky incorporated. Mr. Farag did not revise the musical composition. In her November 9, 2005 Declaration, Ms. Janky states that, following the revisions:

      6.  I prepared a new copyright registration form for "Wonders of Indiana" p.k.a. "Indiana" and inserted Mr. Farag's name on a second Short Form PA copyright registration form as an indication of my gratitude, to designate his credit for the ideas, and to demonstrate that I appreciated every little bit of support, which is hard to obtain in this industry.  I now understand that the proper way to give a "thank you" for any de minimis contribution is to give acknowledgment on the album credits and/or liner notes.  I submitted the copyright form to the Copyright Office on or about December 16, 1999 and received a copyright registration certificate.

      7.  I never intended for Mr. Farag to acquire any copyright ownership interest in the song "Wonders of Indiana" p.k.a "Indiana" and I did not consider him to be a co-author of the song.  Mr. Farag was not present when I originally created the song in early 1999.  I created the music for the song 100% on my own.  Mr. Farag's contributions to the song were minor and are limited to a few suggestions.

      8.  Mr. Farag never requested that I put his name on the copyright registration form.

      9.  Mr. Farag and I never discussed his intent or desire to share ownership of my song and he never told me that he thought my song belonged to him or told me to designate him as a joint author.

Pl. Br., Exh. E-2.  Thus, Ms. Janky has explained that her motivation for including Mr. Farag's name on the December 1999 certificate of registration was not to grant him joint authorship but rather to give him "credit" for his contributions.  *See also* Def. Resp., Exh. E, p. 65 (Janky dep.) (stating that she filed the December 1999 registration "to give Mr. Farag credit for what little he did").  She did not solicit his agreement in adding his name to the copyright registration, and she testifies that he did not express any desire to be included as an author of the revised song.  In her deposition, she also explained that she learned afterwards that including his name and indicating "joint work" was not the way to give him credit for or acknowledge his contributions, which led her to file the third copyright application in 2003.  *See* Def. Resp., Exh. E, p.68 (Janky dep.).

Ms. Janky also offers Mr. Farag's allegations in his Counterclaim, which explicitly deny that he gave her permission to include his name on the registration and claims that it is thus a fraudulent document.  *See* Counterclaim, ¶ 1 [DE 4].  Although Mr. Farag states in the last sentence of that same paragraph of the Counterclaim that he is a "co-writer," this alone is not evidence of his or their

intent at the time the revised song was created.  *See Erickson*, 13 F.3d at 1071 (requiring that the intent be "at the time the work was created").  Rather, it is a label that he has placed on his status that, without more, does not demonstrate intent.

As with the playwright and her play in *Erickson*, Ms. Janky had written the song in its entirety before Mr Farag made the revisions, revisions which were made for the purpose of complying with the requirements of LCCVB's song request.  In *Childress v. Taylor*, the court found that an individual who enlisted a playwright to write a play and who provided background research, suggested scenes and characters, and discussed the progress of the written script with the playwright on a regular basis was not a co-author because the playwright was responsible for the actual structure of the play and the dialogue.  945 F.2d 500, 502 (2d Cir. 1991).  Similarly, Ms. Janky is responsible for the structure of the song, having written the musical composition and the lyrics.  Mr. Farag's minimal revisions were even more minor than the input provided by the non-author in *Childress*.

In *Erickson*, the court found that the defendant had produced some evidence of joint authorship as to one of the plays because the alleged co-author testified that at least two scenes were developed through collaboration and she considered the dialogue to be hers as well as the playwright's.  13 F.3d at 1072.  In addition, the playwright had initially attributed the script to both the alleged co-author and herself.  *Id*. (citing *Childress*, 945 F.2d at 508).[5]  Likewise, there are no written agreements between Ms. Janky and Mr. Farag or Street Gold Records regarding the playing or performing of the video. Unlike in *Erickson*, there is no testimony from Mr. Farag that he

---

[5] However, the court ultimately found that none of the plays were joint works because the alleged joint authors' contributions could not be independently copyrighted.  *See Erickson v. Trinity Theatre, Inc.*, 13 F.3d 1061, 1072-73 (7th Cir. 1994).

considered himself a co-author, other than the statement in his Counterclaim, and on what basis he might so consider himself. Nor is there any testimony or evidence regarding who made the decision to list both Ms. Janky and Mr. Farag as authors of the song on the album jacket. The fact of Mr. Farag's name under the song title on the album jacket, without more from Mr. Farag himself, is insufficient to establish intent.

Ms. Janky has offered evidence that there was no intent to be joint authors, including her sworn testimony as to her intent, but, in response, LCCVB offers no evidence of Mr. Farag's intent regarding joint authorship by way of deposition testimony, a declaration, or an affidavit of Mr. Farag articulating that intent. Rather, LCCVB argues simply that Ms. Janky's position that she did not intend joint authorship is belied by her having filed the December 1999 copyright registration form, and the only evidence of intent offered by LCCVB is the fact of the December 1999 copyright registration and the ASCAP registration.[6] However, as set forth above, the December 1999 registration is only the starting point, serving as prima facie evidence of a valid copyright. Ms. Janky has offered evidence demonstrating that Mr. Farag was not a joint author and explaining her motivation for including his name on the December 1999 registration, shifting the burden to LCCVB

---

[6] In its Motion for Summary Judgment, LCCVB asserts that "[t]he Album 'Doo-It Doo-Wop', on which the song *Lake County, Indiana* was recorded, was produced by Henry Farag via Street Gold Records," and that "Henry Farag via Farag Music BMI is the publisher of the song *Lake County, Indiana*." Def. Mot., ¶¶ 8-9. In the "Statement of Genuine Issues," which is strangely found in a motion for summary judgment that should be asserting there is *not* a genuine issue of material fact, LCCVB lists as the third and final issue: "As Publisher of the song *Lake County, Indiana*, Farag Music BMI Authorized Lake County Via a Non-Exclusive License to Play the Song, *Lake County, Indiana*." Def. Opp. Br., p. ii. However, LCCVB does not rely on, utilize, or analyze these alleged facts anywhere in the text of its Brief in Support of Motion for Summary Judgment, nor does it offer any legal authority related to these alleged facts.

Similarly, in its Response in Opposition to the Plaintiff's Motion for Summary Judgment, LCCVB asserts that "Plaintiff has also admitted that Mr. Farag had the exclusive distribution rights to the album Doo-It Doo-Wop which contained the song at issue." Def. Resp., ¶3; *see also* Def. Resp., ¶¶ 5c, 5d, 5e. And in the introduction to its Brief in Opposition, LCCVB writes, "As stated in plaintiff's deposition testimony, Mr. Farag had the exclusive distribution rights to both the album containing the song in question as well as the video performance of the song." Def. Opp. Br., p. 1. Yet, nowhere in its response does LCCVB utilize or analyze this alleged fact or present law that would render this alleged fact useful to LCCVB.

Accordingly, as no issue relating to publishing or distribution has been developed by LCCVB, the Court finds LCCVB has waived any such arguments and the Court will not address them.

to demonstrate a genuine issue of material fact as to that evidence.  LCCVB cannot meet its burden by relying on the initial prima facie evidence; it must come forth with something more.   Because it has not offered any evidence that Mr. Farag intended to be a joint author of the revised song, LCCVB has failed to create a genuine issue of material fact as to intent.  Therefore, LCCVB cannot establish the intent prong of joint authorship, which is needed to refute the presumptive validity of Ms. Janky's copyright registration.

Furthermore, even if intent could be established, Mr. Farag's contributions are not independently copyrightable, as argued by Ms. Janky in her Motion for Summary Judgment.  Mr. Farag's contribution to the revised song was a ten percent revision of the lyrics to meet requirements articulated by LCCVB.  "Ideas, refinements, and suggestions, standing alone, are not the subjects of copyrights."  *Erickson*, 13 F.3d at 1072.[7]  Consequently, LCCVB cannot establish the second element of the copyrightability test, and its assertion that Mr. Farag is a joint author must fail.

Finally, there is no evidence of a contract between Ms. Janky and Mr. Farag pursuant to 17 U.S.C. § 207(d) that would have granted Mr. Farag authorship status.

Consequently, LCCVB has not demonstrated joint authorship and thus has not refuted the prima facie evidence of the validity of Ms. Janky's copyright; Ms. Janky remains entitled to the presumption that her copyright is valid.  In addition, because Mr. Farag is not a joint author, he did not have the authority to grant LCCVB a license to use the revised song.

---

[7] In contrast, an example of independently copyrightable parts would be the lyrics and the music for a song, as suggested in the legislative history to 17 U.S.C. § 101.  *See* H.R.Rep. No. 1476, 94th Cong., 2d Sess. 120 (1976), *reprinted in* 1976 U.S.C.C.A.N. 5659, 5736; S. Rep. NO. 473, 94th Cong., 2d Sess. 103-04 (1975).

*2.  Copying*

"The most straightforward type of copying is the public performance of another's musical composition." *Broadcast Music, Inc. v. Niro's Palace, Inc.*, 619 F. Supp. 958, 961 (D.C. Ill. 1985) (citing *Twentieth Century Music Corp. v. Aiken*, 422 U.S. 151, 157 (1975)).  In her Motion for Summary Judgment, Ms. Janky asserts that there is no genuine issue of material fact that "Defendant Lake County publicly used, performed, copied, distributed and sold copies of 'Wonders of Indiana' a.k.a. 'Indiana' without Plaintiff Janky's authorization as well as without compensating Plaintiff Janky."  Pl. Mot., ¶ 5.e.  LCCVB does not deny that it used the revised song but rather argues that it used it with Mr. Farag's permission as joint author.  Because the Court has found that Mr. Farag was not a joint author, LCCVB's reliance on any license granted by Mr. Farag as a joint author does not release LCCVB from its obligation to get permission from Mr. Janky prior to using the revised song.  *See* 17 U.S.C. § 106(4).

The evidence of record that LCCVB played Ms. Janky's copyrighted song in public without a license from her is as follows.  In her January 2004 Declaration, Ms. Janky states, "My musical work is part of an audio soundtrack for a 12-minute video for Lake County and is or was being shown in their Welcome Center as well as used on their phone lines and the background music for customers put on 'hold.'"  Pl. Br., Exh E-1,¶ 10 (unsigned); Def. Br., Exh. 1, ¶ 10 (signed).  In its Answer to Ms. Farag's Complaint, LCCVB alleges that "the musical works in question no longer appear as part of an audio/video soundtrack being shown at the Welcome Center.  Lake County also states that the musical works in question are not currently being used as background music for customers placed on hold."  LCCVB Answer, ¶ 20 [DE 49].  In his Declaration, James Tsismanakis, the President/CEO of LCCVB testifies, "[LCCVB] has never played the promotional video in question or otherwise played the song 'Lake County, Indiana' in the State of Michigan."  Pl. Br.,

Exh. D, ¶ 7.  Indirectly, LCCVB admits use in its Answer: "Plaintiff's claims and/or damages are limited because of defendant's innocent infringement."  LCCVB Answer, ¶ 12 [DE 49].

Ms. Janky also stated in her January 2004 Declaration, "I have not consented to the sale or use of my musical work to be licensed, published, or used by anyone.  I have not received any royalties or payments for the licensed, published use or sale of 'Indiana' or 'Christmas Lullaby' from the Defendants."  Pl. Br., Exh E-1,¶ 12 (unsigned); Def. Br., Exh. 1, ¶ 12 (signed).  In her November 2005 Declaration, she testified, "Mr. Farag sold my song to Lake County Convention and Visitors Bureau.  Lake County Convention and Visitor's Bureau used my music and lyrics without my consent and without compensating me for the sale and use of my song.  Mr. Farag did not inform me that he was negotiating to sell my song to [LCCVB]."  Pl. Br., Exh. E-2, ¶ 11.  LCCVB has not offered any evidence that it sought or obtained Ms. Janky's consent to use the revised song in the Welcome Center, the video, and on its phone lines.[8]

Accordingly, there is evidence of record to demonstrate some unauthorized use by LCCVB of Ms. Janky's revised song.  However, the nature and extent of that use is unclear from the record and is left to be determined by the trier of fact.  The issue of damages also remains for the trier of fact.

---

[8] There is no dispute that the only song Ms. Janky alleges was infringed by LCCVB is the revised song.  *See* Def. Br., Exh. 8, p. 144 (Janky Dep.).

### B.  Indiana Tort Claims Act

LCCVB asserts that all of Ms. Janky's claims against it are barred by the Indiana Tort Claims Act ("ITCA").  Although not applicable to Ms. Janky's federal copyright claim, the ITCA could be applicable to Ms. Janky's Indiana state law claims.  *See McLaughlin v. Tilendis*, 398 F.2d 287, 290 (7th Cir. 1968) ("Under the Supremacy Clause, [the Illinois Tort Claims Act] cannot protect defendants against a cause of action grounded, as here, on a federal statute."); *see also Wade v. City of Pittsburgh*, 765 F.2d 405, 407-08 (3d Cir. 1985) (holding in a copyright infringement action that, although a tort claims act is effective against a state tort claim, "[t]he supremacy clause of the Constitution prevents a state from immunizing entities or individuals alleged to have violated federal law"); *Mary Doe v. Lance*, NO. 3:95-V-736RM, 1996 WL 663159, *5 (N.D. Ind. Oct. 30, 1996) ("Indiana law does not determine the subject-matter jurisdiction of the federal courts, but compliance with state jurisdictional requirements is a predicate for a state law claim.").

In her Motion for Summary Judgment, Ms. Janky argues that the ITCA is inapplicable in this case because her action was originally filed in Michigan.  This conclusion is incorrect.  Despite the original filing of this matter in the United States District Court for the Eastern District of Michigan, the law of Indiana, not Michigan, is applicable because the transfer was made pursuant to 28 U.S.C. § 1631.  Normally, a federal court sitting in diversity applies the forum state law.  *See Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941) (citing *Erie Railroad v. Tompkins*, 304 U.S. 64, 74-77 (1938)).  In contrast, when a case is transferred pursuant to 28 U.S.C. § 1404(a) on the motion of a defendant, the transferee court must follow the choice of law rules of the transferor court.  *See Van Dusen v. Barrack*, 376 U.S. 612, 635-37 (1964).

22

However, this matter was transferred to the Northern District of Indiana, Hammond Division, from the Eastern District of Michigan pursuant to 28 U.S.C. § 1631, not 28 U.S.C. § 1404(a). Section 1631 provides:

> Whenever a civil action is filed in a court as defined in section 610 of this title . . . is noticed for or filed with such a court and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court in which the action . . . could have been brought at the time it was filed or noticed, and *the action . . . shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred*.

28 U.S.C. § 1631 (emphasis added).   When the transferor court determines that it lacks personal jurisdiction, as the Eastern District of Michigan did in this case, "the law of the transferee forum must apply, in order to prevent plaintiffs from enjoying choice-of-law advantages to which they would not have been entitled in the proper forum."  *Western Smelting & Metals, Inc. v. Slater Steel, Inc.*, 621 F. Supp. 578, 582 (N.D. Ind. 1985) (citing *Tillett v. J.I. Case Co.*, 756 F.2d 591, 593 n. 1 (7th Cir.1985); *Gonzalez v. Volvo of Am. Corp.*, 734 F.2d 1221, 1223 (7th Cir.1984); *Nelson v. International Paint Co.*, 716 F.2d 640, 643 (9th Cir.1983); *Roofing and Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 992 (11th Cir.1982); *Ellis v. Great Southwestern Corp.*, 646 F.2d 1099, 1110 (5th Cir.1981); *Reyno v. Piper Aircraft Co.*, 630 F.2d 149, 165 (3d Cir.1980), *rev'd on other grounds*, 454 U.S. 235 (1981); *Martin v. Stokes*, 623 F.2d 469, 475 (6th Cir.1980)). Accordingly, this matter must proceed as if it had been filed in the Northern District of Indiana, the transferee court, on October 30, 2003, the date on which Ms. Janky actually filed her Complaint with the Eastern District of Michigan, the transferor court.

The Indiana Tort Claims Act ("ITCA") requires, as a prerequisite to a tort action, that notice to a political subdivision be filed within 180 days of the occurrence of the loss:

> Except as provided in section 9 of this chapter, a claim against a political subdivision
> is barred unless notice is filed with:
> (1) the governing body of that political subdivision; and
> (2) the Indiana political subdivision risk management commission created under IC
> 27-1-29; within one hundred eight (180) days after the loss occurs.

Ind. Code § 34-13-3-8.  Under the ITCA, notice "must describe in a short and plain statement the

facts on which the claim is based.  The statement must include the circumstances which brought

about the loss, the extent of the loss, the time and place the loss occurred, the names of all persons

involved if known, the amount of the damages sought, and the residence of the person making the

claim at the time of the loss and the time of filing the notice." *Alexander v. City of South Bend*, 256

F. Supp. 2d 865, 876 (7th Cir. 2003) (quoting Ind. Code § 34-13-3-10; citing *LCEOC, Inc. v. Greer*,

699 N.E.2d 763, 767 (Ind. Ct. App. 1998)).

"Compliance with the notice provisions of the ITCA is a procedural precedent which the

plaintiff must prove and which the trial court must determine before trial." *Id*. at 875 (quoting

*Davidson v. Perron*, 716 N.E.2d 29, 34 (Ind. Ct. App. 1999)).  "Once a defendant raises failure to

comply with the ITCA's notice requirements, the burden shifts to the plaintiff to prove compliance."

*Id*.  "A governmental entity's immunity from liability under the ITCA is a question of law for the

court." *Alexander*, 256 F. Supp. 2d 865, 875 (N.D. Ind. 2003) (citing *City of Anderson v. Davis*, 743

N.E.2d 359, 362 (Ind. Ct. App. 2001)).

LCCVB asserts that it is a political subdivision for purposes of Indiana Code § 34-6-2-110,

and Ms. Janky does not disagree in her Motion for Summary Judgment.  LCCVB was created by the

Indiana General Assembly, *see* Ind. Code § 6-9-2-3, and is funded by the Lake County Innkeeper's

Tax through the "promotion fund," *see* Ind. Code §§ 6-9-2-1, 6-9-2-2.  The LCCVB has fifteen

members, who are appointed by the executives of the eight largest municipalities in the county (one

appointment each), the legislative body of the two largest municipalities (one appointment each),

24

the county council (two appointments), the county commissioners (two appointments), and the lieutenant governor (one appointment). *See* Ind. Code §§ 6-9-2-1, 6-9-2-3(a)-(g). Members of the bureau take an oath of office that is filed with the clerk of the circuit court of the county. Ind. Code § 6-9-2-3(l). The powers of LCCVB include the capacity to sue and be sued and to exercise the power of eminent domain to acquire property to promote and encourage conventions, trade shows, special events, recreation, and visitors within the county. Ind. Code § 6-9-2-4. The statute further requires that "[a]ll money in the promotion fund shall be deposited, held, secured, invested, and paid in accordance with statutes relating to the handling of *public funds*. The handling and expenditure of money in the promotion fund is subject to audit and supervision by the state board of accounts." Ind. Code § 6-9-2-4(c) (emphasis added). In the event LCCVB approves the execution of a lease, the bureau may only do so having found "that the services to be provided through the life of the lease *will serve the public purposes for which the bureau was created and that the execution of the lease is in the best interests of the residents of the county*." Ind. Code § 6-9-2-4.7(e) (emphasis added). Moreover, the statute provides that the "financing of the construction, acquisition, and equipping of a visitor center to promote and encourage conventions, trade shows, special events, recreation, and visitors within the county serves a public purpose and is of benefit to the general welfare of the county by encouraging investment, job creation and retention, and economic growth and diversity." Ind. Code § 6-9-2-5.5. The Court finds that LCCVB is a political subdivision for the purposes of § 34-6-2-110.

In her Brief in Support of her Motion for Summary Judgment, Ms. Janky admits that she did not give LCCVB notice of the infringement. In contradiction, Ms. Janky states in her Declaration generally that she gave LCCVB notice of its infringement. However, Ms. Janky provides no details or proof in support that any such notice was proper under the ITCA or, more importantly, that it was

25

timely.  Because Ms. Janky has not complied with the 180-day notice provision of the ITCA, Ms. Janky's Indiana state law claims are barred.  However, as noted above, the ITCA does not bar her federal claims under the copyright act.

### CONCLUSION

Based on the foregoing, the Court (1) **GRANTS in part** and **DENIES in part** Defendant Lake County Convention & Visitors Bureau's Motion for Summary Judgment [DE 29]; (2) **GRANTS in part, DENIES in part**, and **DENIES in part as moot** Plaintiff Cheryl Janky's Motion for Summary Judgment [DE 63]; and (3) **DENIES as moot** Plaintiff Cheryl Janky's Request to Schedule Oral Argument on Plaintiff's Motion for Summary Judgment [DE 65].

The Plaintiff's state law claims against Defendant Lake County Convention and Visitors Bureau are **DISMISSED**; however, the Plaintiff is **GRANTED** summary judgment on her federal copyright claim against LCCVB on the issue of her ownership of a valid copyright in the revised song and on the general assertion that LCCVB played her song publicly without her authorization. The determination of the nature and extent of the infringement as well as damages remain a question for the trier of fact.  The Plaintiff's motion as to Defendant Henry Farag is **DENIED as moot** in light of the discharge in bankruptcy.

So ORDERED this 29th day of March, 2006.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc: All counsel of record, Henry Farag *pro se*