**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**HAMMOND DIVISION**

| | | |
|---|---|---|
| CHERYL JANKY, | ) | |
|     Plaintiff, | ) | |
| | ) | |
|     v. | ) | CAUSE NO.: 3:05-CV-217-PRC |
| | ) | |
| LAKE COUNTY CONVENTION & VISITORS | ) | |
| BUREAU, | ) | |
|     Defendant. | ) | |

## ORDER

This matter is before the Court on Defendant Lake County Convention & Visitors Bureau's Motion for the Court to Reconsider Its Opinion of May 15, 2006 [DE 132], filed by Lake County Convention & Visitors Bureau ("LCCVB"), on June 7, 2006. On June 15, 2006, Plaintiff Cheryl Janky filed a response, and on June 16, 2006, Ms. Janky filed an Amended and Corrected Response to Defendants' [sic] Second Motion for Reconsideration and Motion for Rule 11 Sanctions. On June 29, 2006, LCCVB filed a reply.

## PROCEDURAL BACKGROUND

On October 3, 2003, Cheryl Janky filed a Complaint against Henry Farag, Street Gold Records, and LCCVB in the United States District Court for the Eastern District of Michigan. LCCVB filed an Answer on December 8, 2003, and Henry Farag filed an Answer and Counterclaim on January 7, 2004. On January 8, 2004, LCCVB filed an Amended Answer. Ms. Janky filed an Answer to the Counterclaim on February 6, 2004.

This matter was transferred to the Northern District of Indiana on March 31, 2005.

LCCVB filed its Motion for Summary Judgment in the Northern District of Indiana on July 21, 2005.

On August 10, 2005, Ms. Janky filed an Amended Complaint, to which LCCVB filed an objection on August 15, 2005.  On September 9, 2005, Ms. Janky filed a Motion for Leave to File Amended Complaint and a Rule 56 Motion to Strike LCCVB's Motion for Summary Judgment.  On September 19, 2005, LCCVB filed a response to both motions.  On September 12, 2005, the Court ordered that the August 10, 2005 Amended Complaint be stricken from the record, and on October 3, 2005, the Court granted the Motion for Leave to Amend Complaint for the sole purpose of correctly identifying Street Gold Records as a sole proprietorship.

On October 5, 2005, Ms. Janky filed an Amended Complaint for copyright infringement, unfair competition, unjust enrichment, negligence, misappropriation, and an accounting of royalties. LCCVB filed an Answer on October 10, 2005.

On October 19, 2005, the parties consented to have this case assigned to a United States Magistrate Judge to conduct all further proceedings and to order the entry of a final judgment in this case.  Thus, this Court has jurisdiction to decide this case pursuant to 28 U.S.C. § 636(c).

On October 21, 2005, Ms. Janky filed a Motion for Leave to File a Second Amended Complaint and a Motion for Extension of Time to File a Response to LCCVB's Motion for Summary Judgment.  Without leave of Court, she filed the Response in Opposition to the Motion for Summary Judgment that same day.  On October 26, 2005, LCCVB filed a response in opposition to both of Ms. Janky's motions.  On December 1, 2005, the Court denied the Motion for Leave to File Second Amended Complaint.

On October 27, 2005, the Court held a hearing during which the Court denied the Motion to Strike the Motion for Summary Judgment, denied the Motion for Extension of Time to File a Response to LCCVB's Motion for Summary Judgment, ordered that the Response to the Motion for

Summary Judgment be stricken, and granted a Motion Requesting Ruling on Motion for Summary Judgment, which had been filed on September 1, 2005, by LCCVB.

On November 9, 2005, Ms. Janky filed a Motion for Summary Judgment and a Motion for Oral Argument on Motion for Summary Judgment.  LCCVB filed a response to the Motion for Summary Judgment on December 6, 2005, and a response to the Motion for Hearing on November 14, 2005.  Ms. Janky filed a Reply in support of her Motion for Summary Judgment on December 23, 2005.

On April 18, 2006, LCCVB filed a Motion for Rehearing and Reconsideration Pursuant to FRCP 60, which the Court denied on May 15, 2006.

On May 19, 2006, the Court held a final pretrial conference in this matter.

On June 7, 2006, LCCVB filed the instant Motion for Reconsideration of the Court's May 15, 2006 Order.  The same day, the Court issued an order taking under advisement the Motion to Reconsider, setting a briefing schedule for the motion, and continuing the June 12, 2006 jury trial pending ruling on the motion.  Ms. Janky filed a response to the motion on June 15, 2006, and an amended and corrected response on June 16, 2006.  LCCVB filed a reply on June 29, 2006.


## MATERIAL FACTS[1]

*A.  Material Facts from March 29, 2006 Order on Summary Judgment*

Cheryl Janky and Henry Farag were members of Stormy Weather, a musical group.  At rehearsal one evening, Mr. Farag made an announcement that LCCVB was looking for a song to represent Lake County.  No formal rules or parameters for the contents of the song were provided

---

[1] The Court reproduces the relevant facts as set forth in its May 16, 2006 Order, which is under reconsideration in the instant Order.

to the group.  As a result of that announcement, Ms. Janky wrote the music and lyrics of the song "Wonders of Indiana" a/k/a "Indiana," and on May 6, 1999, without the assistance of counsel, Ms. Janky obtained a copyright for the musical work titled "Wonders of Indiana," (Pau2-397-856), indicating that she was the author.

Subsequently, Henry Farag offered his ideas and suggestions for revising the lyrics of "Wonders of Indiana" in order to comply with LCCVB's requirements.  Ms. Janky incorporated the suggestions, which she states constitute a 10% revision of the song's lyrics.  Ms. Janky prepared a new copyright registration form for the revised song and signed both her and Mr. Farag's names on the form, and on December 16, 1999, Ms. Janky obtained a copyright (Pau2-485-026) for the revised song, "Indiana (Wonders of)," again without the assistance of counsel.   On the copyright registration, Ms. Janky gave herself credit for the music and lyrics and gave Mr. Farag credit for 10% of the lyrics, noting "additional lyrics/(joint work)."  Def. Br., Exh. A; Pl. Br, Exh. A-2.  Both Ms. Janky and Mr. Farag are listed on the copyright registration as copyright claimants.  Ms. Janky further indicated on the form that the material added to the work was "additional lyrics to be used in [ ] with original lyrics."  *Id*.  On an ASCAP application, she gave Mr. Farag ten percent credit.

In a November 9, 2005 Declaration, Ms. Janky states that her intent in including Mr. Farag on the December 16, 1999 copyright registration for the revised song was to indicate her gratitude, to designate credit for the ideas, and to demonstrate that she "appreciated every little bit of support, which is hard to obtain in this industry."  Pl. Br.., Exh. E-2, ¶ 6.  She explains, "I now understand that the proper way to give a 'thank you' for any de minimis contribution is to give acknowledgment on the album credits and/or liner notes."  *Id*.  Ms. Janky further states, "I never intended for Mr. Farag to acquire any copyright ownership interest in the song 'Wonders of Indiana' a/k/a 'Indiana'

and I did not consider him to be a co-author of the song.  Mr. Farag was not present when I originally created the song in early 1999.  I created the music for the song 100% on my own.  Mr. Farag's contributions to the song were minor and are limited to few suggestions."  *Id*., ¶ 7.  She represents that Mr. Farag and she never discussed his intent or desire to share ownership of the song.

Mr. Farag never requested that she include his name on the copyright registration form and claims in his Counterclaim that her act of affixing his name to the copyright registration form has harmed his reputation.  He asserts that the registration is a fraudulent document.  Mr. Farag has not filed a copyright registration of his own asserting his contribution to the lyrical composition of the revised song.

On July 15, 2003, Ms. Janky, without assistance of counsel, submitted a third copyright registration for the work "Indiana (Wonders of)," listing a "contents title" of "Lake County."  She identified only herself as the author of the music, lyrics, and "arrangement performance."  Pl. Mem., Exh. A-3.  On the registration, she acknowledged the May 1999 registration (Pau 2-397-856) as the previous registration, and then indicated that the derivative work was a sound recording based on the Pau 2-397-856 registration.

Street Gold Records released the revised song on the "Doo-It Doo-Wop" album, performed by Stormy Weather, of which both Mr. Farag and Ms. Janky were members.  The CD has a copyright date of 2000 and lists Ms. Janky and Mr. Farag as authors of the revised song and Farag Music BMI as the publisher of the revised song.  There is no evidence in the court record regarding whether a copyright registration was filed or approved for the "Doo-It Doo-Wop" album that contained the performance of the revised song or for the sound recording of the revised song individually.

The group Stormy Weather also recorded a video, which included the song *Lake County, Indiana*. Mr. Farag produced the video. LCCVB paid for the video and advertised the group in exchange for a non-exclusive license to use the revised song, granted by Mr. Farag to LCCVB. There are no written agreements between Ms. Janky and Mr. Farag or Street Gold Records regarding the playing or performing of the video.

Ms. Janky states in her January 16, 2004 Declaration that the release of the revised song is a part of an audio soundtrack used for a twelve-minute video for LCCVB that was being shown at the Welcome Center and was being used on their phone lines as the background music for customers put on hold. LCCVB also sold copies of the album "Doo-It Doo-Wop" at the Welcome Center. LCCVB states in its Answer that the revised song no longer appears as part of the audio/video soundtrack being shown at the Welcome Center and is not currently being used as background music for customers placed on hold.

Mr. Farag is the sole owner of Street Gold Records, a sole proprietorship. He states in his declaration that Street Gold Records was responsible for producing, manufacturing, and marketing the albums recorded by Stormy Weather.

Mr. Farag further states that as owner and/or co-owner of the revised song, he issued a non-exclusive license to LCCVB to play the song in question at the Welcome Center, at functions, in promotional ads, and to individuals who called the Welcome Center and were placed on hold.

He also explains that Farag Music BMI is the publisher of original material created and performed by Stormy Weather and may issue non-exclusive licenses regarding the playing of these works and that Street Gold Records/Farag Music BMI, as the label and publisher of the "Doo It Doo-Wop" album, has the contractual authority to issue non-exclusive licenses for the performance

6

of works recorded by Stormy Weather, including, but not limited to, the revised song. Finally, Mr. Farag states that Street Gold Records/Farag Music BMI, as the label and publisher of "Doo-It Doo-Wop," indeed granted a non-exclusive license to LCCVB to allow the performing of the revised song.

In her 2004 Declaration, Ms. Janky states that Mr. Farag, through his company Street Gold Records, licensed and sold the rights to the revised song to LCCVB without her knowledge, approval, or consent. She further states, "I notified Lake County Convention and Visitors Bureau and Mr. Farag of their unauthorized usage and violation of my copyrights and they refused to cease their infringement of my copyrights." Def. Br., Exh. 1; Pl. Br., Exh. E-1, ¶ 9.

Ms. Janky states that she has not received any money from LCCVB or from Mr. Farag.

*B. Additional Material Facts from May 15, 2006 Order on Motion to Reconsider*

The following facts, not included in the Court's March 29, 2006 Order, but added in the Court's May 15, 2006 Order on the first motion for reconsideration, are taken from Ms. Janky's deposition, submitted in support of LCCVB's response in opposition to Ms. Janky's Motion for Summary Judgment.

Ms. Janky was a member of the group Stormy Weather when she authored the song. One evening at rehearsal, Mr. Farag announced that LCCVB was looking for a song to represent Lake County. By his presentation, Ms. Janky understood that anyone was welcome to write the song, including the public at large. Mr. Farag explained that "it would be really great if Stormy Weather could be the ones to sing [the song] so it's open to anyone to try to come up with it, it would be great if one of [them] did that." Def. Resp. [DE 71], Exh. 8, p. 35.

7

Ms. Janky recorded the revised song with Stormy Weather at Thunderclap Studios.  The version of the revised song that Ms. Janky recorded with Stormy Weather was strictly an a capella demo tape to be given to LCCVB for their review.  *Id*. at p. 40.  The a capella demo resulting from that studio session was the only recording of the revised song that Ms. Janky made.  *Id*. at 49.  She did not make any further recording with musical accompaniment.  *Id*.  Although Ms. Janky recorded songs written by other individuals with Stormy Weather for the "Doo-It Doo-Wop" album, it was only "later [she] found out that the Indiana tourism song, the Wonders of Indiana, that [she] wrote was placed on that CD but at the time, no, [she] did not record it for Doo It Doo-Wop."  Def. Resp. [DE 71], Exh. 8, p. 32.

There was never a contractual agreement between Stormy Weather and Mr. Farag for the "Doo-It Doo-Wop" album.  In the past, for other albums, such as "Doo-Wop and Lollipops," performed by Stormy Weather, Ms. Janky had signed contracts covering the calculation of her royalties as a performer.

Ms. Janky also made a video with Stormy Weather, which included a performance of the revised song.  Her understanding was that the video was to be presented with the song.

Ms. Janky left the group Stormy Weather shortly after the song was recorded.

Mr. Farag and Ms. Janky never discussed who would own the rights to the song if LCCVB adopted it nor did they discuss the use of the song following the recording of the demo tape.

Ms. Janky did not contribute to any of the liner notes or the credits that were listed on the CD booklet for "Doo-It Doo-Wop," and no one showed them to her for her review prior to it being distributed and manufactured.

Ms. Janky never gave consent for the sale of her song on "Doo-It Doo-Wop." *Id*. at 138. She never consented to LCCVB's use of the video and song, never authorized LCCVB to use the song on the telephone lines for customers placed on hold, and never authorized LCCVB to offer the song for sale in their gift shop. *Id*. at 138-39.

Although Ms. Janky states that the sound recording filed with the July 2003 SR copyright registration was the same as the May 1999 copyright registration, *see id*. at p. 130-31 (indicating that the July 2003 registration was for the sound recording of the original song represented by the May 1999 copyright registration but not the December 1999 copyright registration for the revised song),[2] she makes it clear that the sound recording filed with the July 2003 SR copyright registration was the demo tape she recorded with Stormy Weather, *see id*. at p. 52-53 (stating that the sound recording filed with the July 2003 registration form was the Stormy Weather demo tape); *id*. at p. 55 (implying that the sound recording filed with the July 2003 SR copyright registration form was the Stormy Weather demo tape); *id.* at p. 72-73 (stating that she never recorded the song subsequent to the demo tape made with Stormy Weather and that the only other time she performed the song was in December 1999).

## ANALYSIS

In its motion for reconsideration, LCCVB requests, pursuant to Rule 54(b), that the Court reconsider its March 29, 2006 Order on summary judgment and its May 15, 2006 Order denying LCCVB's motion to reconsider the Court's March 29, 2006 ruling. LCCVB requests that the Court enter an Order finding, as a matter of law, that LCCVB did not infringe any federally registered

---

[2] In contrast, earlier in the deposition, she testifies that the demo tape was never filed with the copyright office. Def. Resp. [DE 71], Exh. 8, p. 50.

copyrights held by Ms. Janky on the basis that the song played by LCCVB is a sound recording, a derivative work absent any federal copyright protection, and/or on the basis that LCCVB was justified in relying on the prima facie validity of the December 1999 copyright registration, and/or on the basis that Street Gold Records held the distributorship rights to the "Doo-It Doo-Wop" album, and/or on the basis that LCCVB owned the 12-minute video.

Federal Rule of Civil Procedure 54(b) provides:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Fed. R. Civ. P. 54(b).  The term "judgment" as used in Rule 54(b) "includes a decree and any order from which an appeal lies."  Fed. R. Civ. P. 54(a).  Motions to reconsider an order under Rule 54(b) are judged by largely the same standards as motions to alter or amend a judgment under Rule 59(e) and serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence.  *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. International Fid. Ins. Co.*, 561 F. Supp. 656, 665-66 (N.D. Ill.1982), *aff'd*,736 F.2d 388 (7th Cir. 1984) (citation and footnote omitted)), *amended by*, 835 F.2d 710 (7th Cir. 1987); *Publishers Res. Inc. v. Walker-Davis Publ'ns, Inc.*, 762 F.2d 557, 561 (7th Cir. 1985) (quotation omitted); *Issa v. Priority Trans., Inc.*, No. 1:05-CV-394-TS, 2006 WL 2435554 (N.D. Ind. Aug. 22, 2006); *see also In re Oil Spill by "Amoco Cadiz" Off Coast of France on March 16, 1978*, 794 F.

10

Supp. 261, 267 (N.D. Ill. 1992) ("Motions to reconsider are not at the disposal of parties who want to 'rehash' old arguments."); *Quaker Alloy Casting Co. v. Gulfco Indus., Inc.*, 123 F.R.D. 282, 288 (N.D. Ill. 1988).

A motion to reconsider is proper only when "the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). Accordingly, "motions to reconsider are not appropriate vehicles to advance arguments already rejected by the Court or new legal theories not argued before the ruling." *Zurich Capital Markets Inc. v. Coglianese*, 383 F. Supp. 2d 1041, 1045 (N.D. Ill. 2005) (citing *Schartle v. Motorola, Inc.*, No. 93 C 5508, 1994 WL 323281 at *1 (N.D. Ill. June 24, 1994)). Nor can motions to reconsider be employed as a vehicle for introducing evidence that could have been produced prior to the ruling on summary judgment. *See Rothwell*, 827 F.2d at 251. "Such problems rarely arise and the motion to reconsider should be equally rare." *Bank of Waunakee*, 906 F.2d at 1191.

Despite the limited function of such motions for reconsideration, LCCVB has now filed two motions for reconsideration related to the Court's grant of summary judgment in favor of Ms. Janky on March 29, 2006. More disconcerting is LCCVB's reliance on new legal arguments and new alleged facts not presented in the original briefing on the motions for summary judgment or prior to the Court's ruling on the summary judgment motions. Rather, it appears that LCCVB presumes the right to a second bite at the apple to assert belated arguments in hindsight after an unfavorable summary judgment ruling. As set forth at the appropriate places in the arguments below, the Court will not consider new evidence or new legal arguments that should have been presented prior to the

Court's ruling on summary judgment.  In contrast, the Court will entertain, as it did in the first motion for reconsideration, limited new legal arguments that have arisen as a result of the Court's prior rulings.

In the motion and supporting brief, LCCVB sets forth six bases for reconsideration.  The Court will consider each in turn.

### A.  *"Retroactive Infringement"*

In its first motion for reconsideration, LCCVB argued that the practical effect of the Court's summary judgment ruling was that LCCVB could be held liable for "retroactive infringement," a term coined by LCCVB for the purposes of that motion for reconsideration.  LCCVB argued that, because Henry Farag was listed on the December 1999 copyright registration, and because a certification of registration constitutes prima facie evidence of the validity of the copyright, LCCVB should not now be held liable for infringement of that December 1999 copyright as a result of the Court's determination on summary judgment that Ms. Janky and Mr. Farag were not joint authors when Mr. Farag gave LCCVB permission to use the revised song.  In ruling on the motion for reconsideration, the Court declined to craft a new defense of "retroactive infringement," but rather construed the substance of LCCVB's arguments as the possible established equitable defenses to copyright infringement of fraud, unclean hands, and equitable estoppel within the context of the facts asserted by LCCVB in support of its "retroactive infringement" argument.

In the instant, second motion for reconsideration, LCCVB wholesale reasserts the argument for "retroactive infringement" made in the first motion for reconsideration with a few minor stylistic changes.  The only new information or argument asserted this time around is a final paragraph of

additional facts in support of this argument that were not submitted in support of its motion for summary judgment or in response to Ms. Janky's motion for summary judgment.  However, LCCVB offers no explanation as to why these facts were not discoverable or could not have been offered prior to the Court's ruling on summary judgment.  Nor were these facts offered in support of LCCVB's *first* motion for reconsideration; although a similar showing of why the facts had not previously been offered would have been required for that motion as well.

In this second motion, LCCVB does not address the Court's analysis in the May 2006 Order on the first motion for reconsideration, nor does LCCVB attempt to cure the deficiency in its "retroactive infringement" defense as perceived by the Court in that May 2006 Order–that LCCVB has never asserted that it knew of or relied on the December 1999 copyright registration.[3]  Notably, courts are reluctant to permit defendants to use the prima facie provisions of 17 U.S.C. § 410(c) to establish an effective defense to copyright infringement, and in order to claim estoppel, which is the essence of LCCVB's "retroactive infringement" argument, detrimental reliance is required.  *See* 3 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 12.11.[4]  Based on the Court's May 15, 2006 Order and the inadmissibility of the new evidence offered by LCCVB, the Court denies this basis for reconsideration.

---

[3] This failure is discussed more fully in Part F below in ruling on LCCVB's newly asserted equitable estoppel defense.

[4] On page 12 of LCCVB's reply brief, it asserts, in bold type, that, based on Ms. Janky's statement in footnote 1 of her response brief that "Farag disclosed to the defendant Lake County in November of 1999 of the existence of plaintiff's May 1999 copyright to 'Wonders of Indiana,' but fraudulently claimed he was an author therein," LCCVB is entitled to an instruction that, if infringement is found, it must be innocent infringement.  This specific point was noted by the Court in Part II of its May 15, 2006 Order addressing LCCVB's equitable defenses.  Notably, LCCVB does not offer facts on this motion for reconsideration that it relied on the December 1999 copyright registration that contained Mr. Farag's name.

B.  *Sufficiency of Evidence Offered in Support of Motions for Summary Judgment on Issue of "Joint Authorship"*

Again offering new evidence not submitted in support of summary judgment and without justification for its late submission of the new evidence on this motion for reconsideration, LCCVB now asserts that insufficient evidence existed on summary judgment for the Court to determine that Ms. Janky did not intend for Mr. Farag to be a joint author and that Mr. Farag's contribution was de minimis.  In ruling on this motion for reconsideration, the Court reviews only the evidence that was submitted by the parties in support of their respective motions for summary judgment and responses in opposition and does *not* consider the newly submitted evidence that could have been offered prior to the Court's ruling on summary judgment by LCCVB but that was not.[5]  *See Rothwell*, 827 F.2d at 251.

In its motion for summary judgment, filed July 21, 2005, LCCVB asserted that Mr. Farag was a joint author of the revised song and offered evidence in support in the form of Ms. Janky's declaration in which she identifies Mr. Farag as having made a 10% revision to the lyrics, the copyright registration filed by Ms. Janky wherein she identifies Mr. Farag as a co-author with the work being jointly held by Ms. Janky and Mr. Farag, and the ASCAP registration wherein Ms. Janky listed Mr. Farag as having a 10% interest in the revised lyrics.

In her motion for summary judgment, Ms. Janky argued that Mr. Farag was not a joint author of the revised song and offered, as evidence in support, her sworn declaration that, notwithstanding

---

[5] For the record, the newly submitted evidence that was not offered in support of summary judgment or in response to summary judgment and that the Court now declines to take into account on reconsideration concerns the terms of Ms. Janky's departure from the group Stormy Weather, Ms. Janky's formation of a group named Harbor Lights, Ms. Janky's "pitch" of a new song by Harbor Lights to LCCVB as a replacement for the revised song performed by Stormy Weather, LCCVB's assertions that it has never seen the actual musical compositions submitted as the basis for the December 1999 copyright registration, and a June 13, 2003 letter authored by Ms. Janky's attorney, Mr. Reed.

14

her inclusion of his name on the December 1999 copyright registration, she did not intend for Mr. Farag to be a joint author, explaining that she included his name on the copyright registration to acknowledge his contribution to the song but not confer copyright ownership.  Ms. Janky also offered the ASCAP registration that she had filed showing Mr. Farag as a 10% contributor to the song's revised lyrics as well as Mr. Farag's affidavit that Ms. Janky did not have his consent to insert his name on the copyright registration form.  She suggested that she filed a subsequent copyright registration on July 15, 2003, for a sound recording of the revised song, reflecting Ms. Janky's ownership of 90% of the lyrics and 100% of the music and arrangements of the revised song.

In response to Ms. Janky's Motion for Summary Judgment, LCCVB offered the affidavit of Mr. Farag, which stated that he did not request that Ms. Janky include his name on the copyright registration and that he believes the copyright registration is a fraudulent document.  Mr. Farag's affidavit does not address his intent to be a joint author when he offered revisions to Ms. Janky's original lyrics; however, he does denominate himself a "co-owner" of the revised song in the affidavit.  LCCVB offered no direct evidence to counter Ms. Janky's sworn statements regarding her intent, such as a sworn statement from Mr. Farag regarding his intent that his and Ms. Janky's "contributions be merged into a unitary whole."  Nor did LCCVB offer any evidence that Mr. Farag's contribution was any more than the 10% asserted by Ms. Janky as revisions to the lyrics in order to conform to the use envisioned by LCCVB.  LCCVB again offered Ms. Janky's declaration regarding the 10% lyrical contribution by Mr. Farag, the December 1999 copyright registration identifying the revised song as a joint work, and the ASCAP registration.

In ruling on summary judgment on March 29, 2006, the Court set forth the legal standard for joint authorship:

> Accordingly, before an individual such as Mr. Farag can be afforded the benefits of joint ownership, there must be a finding of joint authorship. A "joint work" is defined as "a work prepared by two or more authors with the intention that their contributions be merged into inseparable or interdependent parts of a unitary whole." 17 U.S.C. § 101. The "statutory language clearly requires that each author intend that their respective contributions be merged into a unitary whole." *Erickson*, 13 F.3d at 1068-69. Contemporaneous input by more than one party alone does not satisfy the intent requirement. *Id*. at 1069.
>
> Even if two individuals collaborate with the intent to create a unitary work, "the product will be considered a 'joint work' only if the collaborators can be considered 'authors.'" *Id*. In the *Erickson* case, the Seventh Circuit adopted the "copyrightability test" for authorship. *Id*. at 1071. This test requires that the contribution of each collaborator "represent[] original expression that could stand on its own as the subject matter of copyright" and that the parties "must have intended to be joint authors at the time the work was created." *Id*. at 1070 (citing Paul Goldstein, *Copyright: Principles, Law, and Practice* § 4.2.1.2, at 379 (1989)). The rationale behind the test stems from the definition of "joint work" in § 101 as a "work prepared by two or more *authors*," and the term "author" is further defined as "the party who actually creates the work, that is, the person who translates an idea into a fixed, tangible expression entitled to copyright protection." *Id*. at 1071 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 737 (1989)).[6] Further, "[a] work is 'fixed' in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration." *Id*. (citing 17 U.S.C. § 101).
>
> In summary, the Seventh Circuit has adopted a two-part test for joint authorship. First, the party asserting joint authorship "must show the parties intended to be joint authors at the time the work was created." *Id*. Second, the party "must show that its contributions to the works were independently copyrightable." *Id*.

Court's March 29, 2006 Order [DE 88].[7]

_____

[6] Neither party took issue with the requirement of a "fixed, tangible expression entitled to copyright protection" in the original motions for summary judgment or the first motion for summary judgment.

[7] In LCCVB's reply brief, it asserts that "one can own certain rights without having been an author," and that Mr. Farag thus is an "owner of exclusive rights." Def. Reply, p. 11. However, LCCVB provides no citation to law or explanation as to what rights an individual can have in a copyright without being an author absent a contractual arrangement or on what basis Mr. Farag is thus an "owner of exclusive rights" in light of the Court's ruling that he is not a joint author.

Although Ms. Janky set forth the standard for joint authorship in her motion for summary judgment and asserted facts in support of her position that she and Mr. Farag were not joint authors, LCCVB did not set forth any standard for determining joint authorship in its response to summary judgment. LCCVB's *only* response to Ms. Janky's assertion that joint authorship did not exist was the statement, without further analysis: "Based on the Certificate of Registration filed by Cheryl Janky with the U.S. Copyright Office, her deposition testimony and affidavit, Henry Farag is a joint author with Cheryl Janky for the entire song 'Lake County, Indiana.'" Def. Resp., p. 8-9 [DE 71]. The remainder of LCCVB's argument was based entirely on the assertion that Mr. Farag and Ms. Janky are tenants in common by way of his 10% contribution to the lyrics, and, therefore, he had authority to license the song. In essence, LCCVB focused solely on the *rights* of a joint owner, assuming the requisite threshold determination of joint authorship without first adequately addressing the legal standard for joint authorship and its requirements of intent and independently copyrightable contributions. LCCVB offered no evidence of *Mr. Farag*'s intent as to joint authorship, such as by way of affidavit, nor did it attempt to counter Ms. Janky's affidavit offered in support of her motion for summary judgment in which she sets forth her intent not to be joint authors and explains why she placed Mr. Farag's name on the copyright registration.

Now, in this second motion for reconsideration, LCCVB for the first time challenges the Court's legal determination of joint authorship, arguing without legal citation, that Ms. Janky's self-serving declaration does not constitute evidence sufficient for this Court to rule, as a matter of law, that Mr. Farag was not a co-author and/or that his contribution was de minimis and that a question of fact remains for the jury. LCCVB does not challenge the legal standard for joint authorship as set forth by the Court in its March 29, 2006 Order.

Federal Rules of Civil Procedure 56(c) and (e) specifically provide for the use of sworn affidavits in support of a motion for summary judgment.  Rule 56 provides that affidavits filed in support of summary judgment "shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein."  Fed. R. Civ. P. 56(e).  An affidavit not in compliance with Rule 56 can neither lend support to, nor defeat, a summary judgment motion.  *See generally*, *Zayre Corp. v. S.M. & R. Co., Inc.*, 882 F.2d 1145, 1148-1149 (7th Cir. 1989); *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572 (7th Cir. 1989).  For example, the following statements are not properly included in an affidavit and should be disregarded:

> (1) [C]onclusory allegations absent supporting evidence, *see DeLoach v. Infinity Board*, 164 F.3d 398, 402 (7th Cir. 1999); *Aberman v. J. Abouchar & Sons, Inc.*, 160 F.3d 1148, 1150 (7th Cir. 1998); (2) legal argument, see Pfeil v. Rogers, 757 F.2d 850, 862 (7th Cir. 1985); (3) selfserving statements without factual support in the record, *see Shank v. William R. Hague, Inc.*, 192 F.3d 675, 682 (7th Cir. 1999); *Small Bus. Admin. v. Torres*, 142 F.3d 962, 968 (7th Cir. 1998); (4) inferences or opinions not "grounded in observation or other first-hand experience," *Visser v. Packer Eng'g Assocs., Inc.*, 924 F.3d 655, 659 (7th Cir. 1991); and (5) mere speculation or conjecture, *see e.g., Stagman v. Ryan*, 176 F.3d 986, 995 (7th Cir. 1999).

*Moore v. Ashland Inc.*, No. IP-99-1173-C-T/G, 2000 WL 1672747, at *1 (S.D. Ind. Oct. 30, 2000).

The Court first considers the role of Ms. Janky's declaration as to the intent requirement for the determination of joint authorship.  In the context of copyright law and the determination of joint authorship, an affidavit, albeit self-serving, may set forth a party's intent.  *See, e.g.*, *Ahn v. Midway Mfg. Co.*, 965 F. Supp. 1134, 1139 (N.D. Ill. 1997) (noting that the party asserting joint authorship, the plaintiffs, offered no evidence to rebut the copyright holder's self-serving affidavit that it never considered the plaintiffs to be collaborators or joint authors).  Although Ms. Janky's declaration is an appropriate form of evidence to determine joint authorship given the nature of the intent

18

requirement of the legal standard, upon further consideration of the evidence that was offered in support of and in response to summary judgment on the issue of joint authorship that controverts the substance of her declaration, the Court reconsiders its earlier finding of no joint authorship based on the intent prong of the test.

The Court now finds that there is a genuine issue of material fact as to the intent requirement for joint authorship.  Unlike in *Ahn*, where the party asserting no joint authorship not only offered an affidavit stating the lack of intent requisite for joint authorship but also offered other "hard" evidence of intent, *see* 965 F. Supp. at 1139, Ms. Janky has not offered any such "hard" evidence in further support of her affidavit.  In fact, there existed "hard" evidence of record on summary judgment in this case to bring into question Ms. Janky's affidavit.  The December 1999 copyright registration form, filed by Ms. Janky, identified the revised song as a joint work, and Ms. Janky signed Mr. Farag's name as a joint author.  In addition, Mr. Farag referred to himself as a co-writer of the song in his affidavit, even though he did not address his intent to be a joint author.  Although her affidavit explains her motivation in including Mr. Farag on the copyright registration, the contradictory nature of her two documents (the copyright registration and the affidavit)[8] and given that the affidavit was drafted in support of the motion for summary judgment for the purposes of this litigation, the issue of intent should be for the jury.  *See Seshadri v. Kasraian*, 130 F.3d 798, 804 (7th Cir. 1997) (holding that the lack of explanation in the affidavit for inconsistencies with prior documentary evidence was insufficient to create a genuine issue of material fact on summary

---

[8] Notably, this is not an instance in which a subsequent affidavit, submitted in support of summary judgment or in opposition to summary judgment, is offered in contradiction of previous testimony without an adequate explanation, as the copyright registration form does not constitute prior sworn testimony. However, as set forth in the case law above, the inconsistencies between the post-summary judgment affidavit and prior documentary evidence render her self-serving affidavit insufficient for a ruling of summary judgment in her favor.

judgment, noting, however, that a party may be able to explain away prior inconsistent statements); *Boardman v. County of Spokane*, No. 94-35703, 1995 WL 444654, *4 (9th Cir. July 26, 1995) (same); *see also Moser Pilon Nelson Architects, LLC v. HNTB Corp.*, 2006 WL 2331013, *9 (D. Conn. Aug. 8, 2006) (holding that the sworn affidavits of parties asserting joint authorship along with one of those two individual's names listed on the certificate of registration raised a genuine issue of material fact sufficient to preclude summary judgment under intent requirement of joint authorship); *see also Positive Black Talk, Inc. v. Cash Money Records, Inc.*, No. Civ. A. 02-0425, 2003 WL 1522941, *3 (E.D. La. Mar. 20, 2003) (declining to rely solely on a self-serving affidavit filed after summary judgment in the determination of copyright ownership).

In other words, the Court cannot say that there is no genuine issue of material fact as to the non-existence of intent for joint authorship based solely on Ms. Janky's November 2005 affidavit such that a finding of no joint authorship on Ms. Janky's motion for summary judgment is not appropriate. However, the Court also finds that there is sufficient evidence of record in the form of Ms. Janky's declaration asserting lack of intent and Mr. Farag's affidavit asserting the fraudulent nature of the December 1999 copyright registration for the issue of joint authorship to survive LCCVB's motion for summary judgment. Despite this reconsidered ruling, the Court nevertheless reaffirms its ruling, as set forth below, that Mr. Farag's contribution is not "independently copyrightable," mandating the entry of summary judgment in favor of Ms. Janky on the issue of joint authorship.

The Court now turns to the second requirement for joint authorship, that each individual's contribution be "independently copyrightable."  *See Erickson*, 13 F.3d at 1071.[9]  Even though the Court has found that intent to be joint authors is a question for the jury, each individual's contribution must be "independently copyrightable."   In its March 29, 2006 Order ruling on summary judgment, the Court conducted an analysis of the revisions made by Mr. Farag in light of *Erickson* and *Childress v. Taylor*, 945 F.2d 500 (2d Cir. 1991), finding that Mr. Farag's contribution to the revised song was a 10% revision of the lyrics in order to meet the subject matter requirements articulated by LCCVB and that the contribution was not independently copyrightable under the standard set by the case law.  Again, "[i]deas, refinements, and suggestions, standing alone, are not the subjects of copyrights."  *Erickson*, 13 F.3d at 1072.

In this motion for reconsideration, LCCVB asserts, without any analysis of the facts that were offered on summary judgment, that there was a "dearth" of evidence offered by Ms. Janky that Mr. Farag's contributions were de  minimis.  LCCVB's specific argument is that Ms. Janky's self-serving and unsupported affidavit was insufficient for a determination that his contribution was de minimis.  On summary judgment the evidence offered by Ms. Janky indicating that Mr. Farag had made a 10% contribution to the lyrics of the revised song consisted of the ASCAP registration; the December 1999 copyright registration form; her statements in her November 2005 declaration that "Mr. Farag's contributions to the song were minor and are limited to a few suggestions" and that she had written 100% of the music and 90% of the lyrics, Pl. M.S.J., Exh. E-2; and Ms. Janky's January 16, 2004 declaration that Mr. Farag had made a 10% revision to her lyrics, all of which demonstrate

---

[9] Neither party addresses the exception to the independently copyrightable requirement of *Erickson* established in *Gaiman v. McFarlane*, 360 F.3d 644 (7th Cir. 2004), and LCCVB has not alleged that the exception is applicable in this case.

that Ms. Janky had consistently maintained, over a period of years, the 10% contribution of Mr. Farag.

In its response brief to Ms. Janky's Motion for Summary Judgment, LCCVB's only argument related to Mr. Farag's contribution to the revised song was the assertion that, for the purposes of that motion for summary judgment, the issue of percentage of ownership, "although disputed," was irrelevant because, as it stated in a footnote, LCCVB contended that the revised song was a work for hire.  As noted in the March 29, 2006 Order, LCCVB offered no evidence or legal argument in support of its theory of work for hire.  In stating that ownership percentage was irrelevant, it appears that LCCVB may have been arguing that percentage of ownership was not relevant because, having already *assumed* Mr. Farag and Ms. Janky were joint authors, LCCVB was asserting that Mr. Farag, as a joint author, had the right to license the song to LCCVB without reference to the percentage of his ownership.

Regardless of the meaning behind LCCVB's argument, the fact remains that LCCVB did not provide evidence or argument in response to Ms. Janky's analysis of joint authorship to create a genuine issue of material fact as to the independent copyrightability of Mr. Farag's contribution to the song as an element of the test for joint authorship.  Nor did LCCVB provide any such evidence in support of the legal standards for joint authorship in its own motion for summary judgment, which asserted joint authorship. Local Rule 56.1 provides that the Court "will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion . . . ."  Local Rule 56.1(b).  On this motion for reconsideration, LCCVB does not identify any information that it had offered in response to the

22

motion for summary judgment to contradict Ms. Janky's assertion, as supported by the evidence, of Mr. Farag's 10% de minimis contribution to the lyrics nor does LCCVB now identify any other evidence that raises a genuine issue of material fact as to the 10% contribution to the lyrics. Accordingly, LCCVB's arguments raised for the first time now, in a second motion to reconsider, are not well taken in light of LCCVB's failure to meet its burden on summary judgment to refute the evidence of record that Mr. Farag's contributions were no more than 10%.

In the fact statement in its response to the motion for summary judgment, LCCVB characterizes certain deposition testimony by Ms. Janky as supporting LCCVB's statement that Mr. Farag's revisions of the lyrics amount to approximately a 25% change to the lyrical content of the original May 1999 version, citing to lines 40-43 and 141-144 in Ms. Janky's deposition.  On summary judgment, the Court disregarded LCCVB's characterization of the facts found at those lines in the deposition as they do not provide support for the cited contention.  In lines 40-43, Ms. Janky discusses generally the time frame in and circumstances under which Mr. Farag revised the lyrics.  In lines 141-144, questioning of Ms. Janky reveals that she had identified four changes to the lyrics by Mr. Farag.  There is no indication that those changes constituted a 25% revision.

In conclusion, upon reconsideration, the Court finds, in contrast with its March 29, 2006 decision, that a genuine issue of material fact exists as to the *intent* of Mr. Farag and Ms. Janky to be joint authors; however, the Court reaffirms its earlier determination that Mr. Farag's revisions were not independently copyrightable and, thus, that Mr. Farag was not a joint author.  As a result, the Court reaffirms its grant of summary judgment in its March 29, 2006 Order in favor of Ms. Janky on the issue of joint authorship.  Again, the Court underscores that LCCVB's failure to offer

23

evidence in the summary judgment proceedings that it now attempts to offer in support of its arguments precludes consideration of this new evidence by the Court on reconsideration.

Finally, in this argument on reconsideration, LCCVB notes that neither LCCVB nor the Court has seen the actual musical composition (lyrics and melody) that Ms. Janky states exist and that she allegedly submitted as a basis for obtaining the May 6, 1999 and December 16, 1999 copyright registrations. First, this argument is untimely and inappropriate on reconsideration as it should have been asserted on summary judgment. As dealt with more fully in Part C below, Ms. Janky submitted the May 1999 and December 1999 copyright registrations in support of her motion for summary judgment, and the copyright registrations constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate, *see* 17 U.S.C. § 410(c), as recognized by LCCVB. Thus, the burden of rebutting the presumption was on the defendant, LCCVB; however, on summary judgment, LCCVB *never* challenged the validity of the copyright registrations on the basis that the works submitted with the copyright registrations were not what Ms. Janky had purportedly sought to copyright when filing the registrations. Had LCCVB questioned the content of the musical composition registered in December 1999 as compared to the content of the revised song it used, LCCVB should have raised it as a defense on summary judgment. As such, the argument is waived and does not serve as a basis for reconsideration.

*C. Evidence of the Musical Composition*

In this argument, LCCVB asserts, once again with no citation to law, that it is impossible for Ms. Janky to substantiate her contention that she is the sole owner of the material that is under federal copyright protection because Ms. Janky has not provided the Court with copies of the

24

materials submitted in support of the May 1999 and December 1999 copyright registrations. LCCVB suggests that, if the musical composition associated with the sound recording it played is sufficiently different than what is purported to have been filed as a musical composition with the December 1999 copyright registration by Ms. Janky, LCCVB cannot be found to have infringed a copyright of Ms. Janky's.

As set forth in the Court's March 29, 2006 Order, and as agreed to by both parties, a certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate" in any judicial proceeding. 17 U.S.C. § 410(c); *Wildlife Express Corp. v. Carol Wright Sales, Inc.*, 18 F.3d 502, 207 (7th Cir. 1994). Thus, LCCVB may rebut this presumption of validity in Ms. Janky's December 1999 copyright, on which her claim of infringement is based. Importantly, at *no time* during the summary judgment briefing or prior to the Court's ruling did LCCVB contest that the lyrics and music of the December 1999 copyright registration were not the same as the revised song recorded by Stormy Weather and used by LCCVB. Nor did LCCVB argue prior to summary judgment that it was unable to review the documents that it now claims are critical to a resolution of this case. During the discovery period, LCCVB never filed a motion to compel documents not provided by Ms. Janky that were requested through discovery. Unquestionably, LCCVB proceeded on summary judgment, both in its own motion for summary judgment[10] and in response to Ms. Janky's motion for summary judgment, on the premise that the song it was alleged to have infringed was the subject of the December 1999

---

[10] LCCVB's first argument in its motion for summary judgment is that Mr. Farag's name on the December 1999 copyright registration constituted prima facie evidence of the validity of his copyright in the song used by LCCVB, the same song that constitutes the basis of Ms. Janky's copyright claim.

copyright registration.  LCCVB's argument, which should have been raised on summary judgment, is untimely.

The Court declines to reconsider its prior orders based on this argument.


*D.  Distribution Rights*

Without citation to law, LCCVB argues that Street Gold Records holds the distributorship rights to the "Doo-It Doo-Wop" album, which Ms. Janky has admitted, and, therefore, LCCVB is authorized to resell the album having received it from the distributor.

First, as clearly set forth in footnote 6 of the Court's March 29, 2006 Order, LCCVB briefly alluded to this "distributor" argument in its Response in Opposition to the Plaintiff's Motion for Summary Judgment, asserting that "Plaintiff has also admitted that Mr. Farag had the exclusive distribution rights to the album Doo-It Doo-Wop which contained the song at issue."  Def. Resp., ¶3; *see also* Def. Resp., ¶¶ 5c, 5d, 5e.  And in the introduction to its Brief in Opposition, LCCVB wrote, "As stated in plaintiff's deposition testimony, Mr. Farag had the exclusive distribution rights to both the album containing the song in question as well as the video performance of the song." Def. Opp. Br., p. 1.  Yet, nowhere in its response to summary judgment did LCCVB utilize or analyze this alleged fact or present law that would render this alleged fact useful to LCCVB.  As a result, the Court found that LCCVB had waived the legal argument on distribution rights.  Now, LCCVB raises the argument, with reasoning but with no citation to copyright law.

Second, it is not clear how this argument is different than LCCVB's primary argument in its first motion for reconsideration that the sound recording of the revised song used by LCCVB from the "Doo-It Doo-Wop" album was independently copyrightable from the underlying musical

composition, and, thus, that LCCVB did not infringe Ms. Janky's copyright.  In its May 15, 2006 Order, the Court concluded that Ms. Janky had not expressly transferred any of her ownership rights in the musical composition when she performed the revised song with Stormy Weather but that she did grant the group an implied non-exclusive license in the revised song and that the right to utilize the musical composition of the revised song by Stormy Weather in the sound recording of the a cappella *demo* was lawfully obtained.  However, the Court then found that Ms. Janky's right of distribution as owner of the musical composition was infringed by LCCVB, despite LCCVB having obtained permission to distribute from Mr. Farag, the owner of the sound recording on the "Doo-It Doo-Wop" album.

LCCVB does not acknowledge the Court's ruling on these issues or attempt to distinguish its position on the distribution argument in this second motion for reconsideration from the Court's prior ruling.  LCCVB's only argument is based solely on the force of Ms. Janky's deposition testimony, claiming that Ms. Janky unequivocally admitted that Mr. Farag and Street Gold Records hold the distributorship rights to the album.  LCCVB asserts that, based on this clear cut evidence, it need not cite any law on distributorship rights.  However, a review of Ms. Janky's deposition testimony demonstrates that her position on distributor rights is less than clear.  Although she agreed that she had previously testified that Mr. Farag or Street Gold Records held the distributorship rights to the "Doo-It Doo-Wop" album, as cited by LCCVB in its motion, upon further questioning from her counsel, she testified that she did not know for a fact that Street Gold had such distribution rights.  LCCVB has not offered evidence of any licensing agreement between Ms. Janky and Mr. Farag or Street Gold Records regarding the transfer of Ms. Janky's distribution rights for the revised

song, and, as he is not a joint author of the revised song, Mr. Farag does not possess any of Ms. Janky's rights, including distribution rights, in the revised song.

LCCVB also asserts in this argument that Ms. Janky stated in her deposition that someone who wishes to *play* an album would obtain the right from the distributor and, thus, LCCVB could play the album with permission from Mr. Farag. However, as set forth in the Court's May 15, 2006 Order, Ms. Janky had no contractual relationship with Mr. Farag and did not assign any of her rights as owner of the copyright in the revised song to him or to Street Gold Records. Again, LCCVB does not address the law or analysis set forth by the Court in its Order regarding the public performance of a phonorecord, and Ms. Janky's lay understanding of the law does not alter her rights as set forth by the law.

As LCCVB did not adequately address the issue of distribution rights in the original briefing on summary judgment, has not addressed or challenged the Court's prior consideration of distribution rights in its May 15, 2006 Order, and offers no newly discovered evidence that Ms. Janky had transferred her rights to Mr. Farag or Street Gold Records, the Court declines to reconsider its orders on the basis of this argument..

*E. Video Ownership*

To clarify the facts, two videos are at issue. First, a promotional video of the revised song was recorded by Stormy Weather in the parking lot of the Star Plaza Theater in Merrillville, Indiana, paid for by LCCVB in exchange for promoting the group. When she performed in this video, Ms. Janky believed that the video was to be used to promote the revised song for the group Stormy Weather in its attempt to have LCCVB utilize the song. Second, a separate 12-minute video

promoting Lake County contained the revised song as part of the audio soundtrack. In the opening paragraph of this argument on reconsideration, LCCVB now alleges that the 12-minute video also includes a segment showing Stormy Weather, including Ms. Janky, singing the revised song as recorded in the parking lot of the Star Plaza Theater. LCCVB further alleges that it produced and paid for the 12-minute video. LCCVB posits that the video in question in the motion for reconsideration is the 12-minute video.

In the March 29, 2006 Order, and more specifically in the May 15, 2006 Order, the Court found that LCCVB infringed Ms. Janky's copyright in the musical composition of the revised song when it used the song in the audio soundtrack of its 12-minute promotional video, notwithstanding its permission from Mr. Farag, the copyright owner of the sound recording, to use the revised song in the soundtrack of the video. In the briefing on summary judgment, LCCVB never asserted that it had not used the revised song on the 12-minute promotional video; rather, LCCVB asserted in its Answer that it was no longer using the song on the video.

The newly presented issue now before the Court is whether LCCVB's incorporation of Stormy Weather's demo video in LCCVB's 12-minute video infringed Ms. Janky's copyright in the musical composition. LCCVB, again with no citation to law, argues that the Court's conclusion in the May 15, 2006 Order that LCCVB had infringed Ms. Janky's copyright by inclusion of the song in the soundtrack of the 12-minute video "was reached without first addressing ownership of the video and/or addressing whether Cheryl Janky holds a copyright registration for the version of the song performed for inclusion in the video." Def. Br., p. 14. The second assertion is incorrect, whereas the first deserves reconsideration in light of the concern that the 12-minute video contained

not only the sound recording of the revised song in the audio soundtrack but also the performance by Stormy Weather caught on video in the parking lot of the Star Plaza Theater.

As to the second basis for the argument, the Court had already found that Ms. Janky held a valid copyright in the revised song on the basis that there was no joint authorship in the revised song when it made its May 15, 2006 ruling.  At no time prior to the Court's order on summary judgment did LCCVB ever assert evidence to contradict the position that the song used in the soundtrack of the 12-minute video was the revised song recorded by Stormy Weather, for which the lyrics and music were subject to the December 1999 copyright registration.  Now, on reconsideration, LCCVB provides assertions in its argument section regarding the content of the video without any evidentiary support, in the form of an affidavit or otherwise.  Any such arguments are disregarded.

As to the first contention, LCCVB argues without citation to law, that, because it owns the video, it has a right to play the video.  However, ownership or creation of a video does not immunize the owner from a claim of copyright infringement if the video contains copyrighted material that the owner does not have permission to use.  Nevertheless, LCCVB argues, without analysis under the relevant legal standards, that it has permission to use the video performance by Stormy Weather of the revised song because Ms. Janky granted it an implied non-exclusive license in the video performance of the revised song by Stormy Weather at the Star Plaza Theater that was then incorporated into the 12-minute video.  LCCVB reasons that the Court's May 15, 2006 holding that Ms. Janky had "granted an implied non-exclusive license in the musical composition of the revised song and that the right to utilize the musical composition of the revised song and the *sound recording* of the demo was lawfully obtained" should be equally applied to Ms. Janky's participation in the *video* performance of the revised song.  LCCVB explains that, by the same analysis used by

the Court as to the sound recording embodied in the a capella demo tape made by Stormy Weather, Ms. Janky's willing participation in and performance for the demo video of the song by Stormy Weather granted LCCVB an implied nonexclusive license in the musical composition of the revised song as performed in that Stormy Weather video.

Accordingly, the Court considers whether Ms. Janky's participation in the video granted LCCVB a non-exclusive license in the revised song as performed in the Stormy Weather demo video. One manner in which to lawfully obtain the rights to utilize a musical composition in the absence of an exclusive license is by the grant from a copyright holder of an implied nonexclusive license for the use of a copyrighted work. *See I.A.E., Inc. v. Shaver*, 74 F.3d 768, 775 (7th Cir. 1996). "In contrast to an exclusive license, a 'nonexclusive license may be granted orally, or may even be implied from conduct.'" *Id.* (citing Melville B. Nimmer & David Nimmer, 3 Nimmer § 10.03[A] at 10-40.1; *MacLean Assocs., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc.*, 952 F.2d 769, 778-79 (3d Cir. 1991); *Effects Assocs. v. Cohen*, 908 F.2d 555, 558 (9th Cir. 1990), *cert. denied*, 498 U.S. 1103 (1991)).[11] "In fact, consent given in the form of mere permission or lack of objection is also equivalent to a nonexclusive license and is not required to be in writing." *Id.* (citing *Pinkham v. Sara Lee Corp.*, 983 F.2d 824, 831 (8th Cir. 1992); *Effects*, 908 F.2d at 558-59;

---

[11] The writing requirement of 17 U.S.C. § 204(a) for the transfer of exclusive rights in a copyright does not apply to a nonexclusive license:

> A copyright owner may transfer to another person any of the exclusive rights the owner has in the copyright; however, such a transfer must be made in writing. 17 U.S.C. § 204(a); *see also Effects Assocs. v. Cohen*, 908 F.2d 555, 557-58 (9th Cir. 1990), *cert. denied*, 498 U.S. 1103, 111 S.Ct. 1003, 112 L.Ed. 2d 1086 (1991). The "transfer of copyright ownership" is defined, in the Copyright Act, as an exclusive license or some other instrument of conveyance. The definition expressly excludes a nonexclusive license. 17 U.S.C. § 101. Therefore, even though section 204(a) of the Copyright Act invalidates any transfer of copyright ownership that is not in writing, section 101 explicitly removes a nonexclusive license from the section 204(a) writing requirement.

*I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 -75 (7th Cir. 1996) (internal footnotes omitted).

31

*MacLean*, 952 F.2d at 778-79; 3 Nimmer § 10.03[A] at 10-36).  Nevertheless, courts have only found implied licenses in "'narrow' circumstances where one party 'created a work at the [other's] request and handed it over, intending that [the other] copy and distribute it."  *Schwarz Pharma, Inc. v. Breckenridge Pharms., Inc.*, 388 F. Supp. 2d 967, 979 (E.D. Wis. 2005) (quoting *SmithKline Beecham Consumer Healthcare, L.P. v. Watson Pharms., Inc.*, 211 F.3d 21, 25 (2d Cir. 2000)); *see also Korman v. HBC Fla., Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999) (determining that plaintiff gave defendant radio station an implied, nonexclusive license to use jingles she had written for station); *Effects*, 908 F.2d at 558.

An implied nonexclusive license arises when "(1) a person (the licensee) requests the creation of a work, (2) the creator (the licensor) makes that particular work and delivers it to the licensee who requested it, and (3) the licensor intends that the licensee-requestor copy and distribute his work."  *I.A.E.*, 74 F.3d at 776 (citing *Effects*, 908 F.2d at 558-59).  There is no transfer of ownership for non-exclusive licenses.  *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 940 (7th Cir. 2003) (citing *I.A.E.*, 74 F.3d at 775).

Ms. Janky did not expressly transfer in writing to Mr. Farag any of the exclusive rights in her copyrighted musical composition.  However, the Court must consider whether Ms. Janky granted an implied non-exclusive license to perform the revised song when she performed the revised song with Stormy Weather in the parking lot of the Star Plaza Theater.  More specifically, the Court must also consider whether any grant of such a license was to Stormy Weather, the performers, and/or Mr. Farag, the producer, as was the question with the sound recording, or whether the grant was to LCCVB based on LCCVB's assertion that it paid for the video.  Although LCCVB claims that it paid for the video, Ms. Janky's testimony is that she believed the performance was a demo video for

Stormy Weather to be used to promote the group and that she was not aware that it would be included on LCCVB's promotional video. Accordingly, there is a question of fact as to whom the implied non-exclusive license, if any, was granted.

At a minimum, Ms. Janky granted Stormy Weather an implied non-exclusive license to perform the song in the video to the same extent that she granted Stormy Weather an implied non-exclusive license to perform the song for the a capella demo sound recording. However, as to the sound recording, the Court held that the license did not relieve LCCVB of its responsibility to secure Ms. Janky's permission as the owner of the copyright of the musical composition to use the song in the audio soundtrack of its 12-minute video. LCCVB does not dispute the Court's ruling on that issue.

Accordingly, if the implied non-exclusive license granted in the revised song by Ms. Janky for the video performance by Stormy Weather rests with Stormy Weather or Henry Farag, LCCVB was nevertheless obligated to obtain permission from Ms. Janky prior to using the performance. In contrast, if the fact finder determines that Ms. Janky granted LCCVB an implied non-exclusive license to use the video performance of the song by Stormy Weather, than LCCVB's inclusion of the Stormy Weather video performance in its 12-minute video would not infringe Ms. Janky's copyright. *See, e.g.*, *Irwin v. American Interactive Media, Inc.*, 2:93cv01403, 1994 WL 394979, *3 (C.D. Cal. Apr. 14, 1994). Therefore, the Court finds that a genuine issue of material fact exists as to whether Ms. Janky granted LCCVB an implied non-exclusive right in the revised song in the performance by Stormy Weather for inclusion in LCCVB's 12-minute video and the scope of that license.

This holding affects only LCCVB's use of Stormy Weather's video performance and does not affect the Court's prior ruling on LCCVB's inclusion of the sound recording of the revised song on the audio soundtrack of the 12-minute video.  LCCVB does not acknowledge or attempt to refute the Court's analysis in its May 15, 2006 Order regarding LCCVB's infringement of Ms. Janky's copyright by its inclusion of the revised song from the sound recording as part of the audio soundtrack of the 12-minute video notwithstanding its permission from Mr. Farag as owner of the copyright in the sound recording.[12]  As noted above, mere ownership of the video is insufficient to guard against a claim of copyright infringement.  As LCCVB has not offered a legal basis for the Court to reconsider its May 15, 2006 Order on the issue of the infringing use of the sound recording on the audio soundtrack of the 12-minute video, the Court declines to reconsider its previous orders on this basis.

## F.  Equitable Estoppel

In this final argument on reconsideration, LCCVB contends that Ms. Janky knew in 1999 that LCCVB was using the revised song to promote tourism and that, despite this knowledge, she took no action to advise LCCVB of her ownership interest in the song until June 13, 2003.

---

[12] The Court further notes as additional reasoning to its May 15, 2006 Order on LCCVB's infringing use of the sound recording of the revised song in the audio soundtrack of the 12-minute video, that, according to Ms. Janky's testimony, she believed that the recording made at Thunderclap Studios by Stormy Weather was for an a capella demo tape to be used to try to promote the song to LCCVB.  Ms. Janky's uncontradicted testimony is that she did not know that the song would be included on the "Doo-It Doo-Wop" album.  As a result, the *scope* of the implied license in the revised song to Stormy Weather for use in the a capella recording was limited to its use as a demo tape.  *See ITOFCA, Inc. v. MegaTrans Logistics, Inc.*, 322 F.3d 928, 940 (7th Cir. 2003) ("A nonexclusive license therefore gives a licensee permission to do whatever is within the scope of that license.") (citing cases).  Nor can a nonexclusive license "be transferred without permission of the copyright owner."  *Id*. at 941 (citing cases).

Therefore, LCCVB asserts that Ms. Janky should be equitably estopped from pursuing this cause of action. Once again, LCCVB offers new facts and new legal arguments that should have been raised on summary judgment but were not; thus, this estoppel argument is untimely and waived. LCCVB's belated discovery of a defense it could have raised earlier does not constitute a basis for reconsideration.

Moreover, it appears that LCCVB now raises this defense as a result of the Court's May 15, 2006 Order, in which the Court construed LCCVB's "retroactive infringement" argument as an argument for various equitable defenses, including equitable estoppel. In that Order, the Court considered whether LCCVB was entitled to the defense of equitable estoppel based on Ms. Janky's inclusion of Mr. Farag's name on the December 1999 copyright registration, the factual predicate for LCCVB's assertion of "retroactive infringement." That basis for estoppel is wholly independent from the basis now asserted by LCCVB–that Ms. Janky knew of LCCVB's use but took no action to protect her copyright. The Court's analysis of equitable estoppel under the facts asserted by LCCVB in the first motion for reconsideration did not open the door for LCCVB to now come forward with a legal argument for equitable estoppel on completely different facts that could have been raised on summary judgment but that was not.

In contrast, if LCCVB believed that the Court had misapprehended the facts in its analysis of equitable estoppel in the context of LCCVB's "retroactive infringement" defense and Ms. Janky's inclusion of Mr. Farag's name on the December 1999 copyright registration in its May 15, 2006 Order, LCCVB may have had grounds to file a motion for the Court to reconsider that analysis, for example, by offering evidence of LCCVB's detrimental reliance on the December 1999 copyright registration. However, as LCCVB has offered no evidence on this motion for reconsideration of its

35

reliance on or even knowledge of the December 1999 copyright registration in accepting authorization from Mr. Farag for use of the song, any such reconsideration by the Court of its equitable estoppel analysis in the May 15, 2006 Order is denied. Moreover, the instant commentary is not an invitation for LCCVB to file a third motion for reconsideration of the Court's May 15, 2006 Order on equitable estoppel, and any such motion filed by LCCVB will be summarily denied.

Therefore, as the issue of infringement has already been determined by the Court on summary judgment, the Court declines to entertain LCCVB's newly raised factual basis for equitable estoppel on reconsideration. *See Coglianese*, 383 F. Supp. 2d at 1045 (holding that a motion for reconsideration is not an appropriate vehicle to advance new legal theories not argued before the ruling).

### G.  Other Arguments

Although not addressed in the substantive arguments of LCCVB's brief in support of the second motion for reconsideration, LCCVB nevertheless asserts in its motion that the sound recording is a derivative work for which no federal copyright registration exists. This argument was the basis for LCCVB's first motion for reconsideration. As LCCVB has offered no new argument in support, the Court relies on its May 15, 2006 Order and denies this basis for the motion for reconsideration.

**CONCLUSION**

Based on the foregoing, the Court now **GRANTS in part** and **DENIES in part** Defendant Lake County Convention & Visitors Bureau's Motion for the Court to Reconsider Its Opinion of May 15, 2006 [DE 132]. The Court **REAFFIRMS** its March 29, 2006 and May 15, 2006 Orders.

SO ORDERED this 22nd day of September, 2006.

s/ Paul R. Cherry
MAGISTRATE JUDGE PAUL R. CHERRY
UNITED STATES DISTRICT COURT

cc:     All counsel of record