UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CHERYL JANKY,           )
                              )
          Plaintiff     )
                              )
         v.            )   Case No. 3:05 cv 217
                              )
LAKE COUNTY CONVENTION &    )
VISITORS BUREAU,        )
                              )
          Defendant    )

OPINION AND ORDER

This matter is before the court on the Motion for Attorney Fees and Costs Under 17 U.S.C. §505; Request for Prejudgment Interest filed by the plaintiff, Cheryl Janky, on April 2, 2007. For the reasons set forth below, the motion for fees is **DENIED**, and Janky's motion for prejudgment interest is **GRANTED IN PART** and **DENIED IN PART**.

Background

The procedural background and relevant facts are taken, in part, from previous court orders. On October 3, 2003, the plaintiff, Cheryl Janky, filed a complaint against Henry Farag, Street Gold Records, and the Lake County Convention and Visitors Bureau (Bureau) in the United States District Court for the Eastern District of Michigan. After resolving jurisdictional disputes which resulted in sanctions against Janky, the matter was transferred to the Northern District of Indiana on March 31, 2005. Following summary judgment motions and motions for recon-sideration, all of Janky's state law claims against the Bureau

were dismissed, leaving only the federal copyright claim.  The
Honorable Paul R. Cherry found that a genuine issue of material
fact existed as to whether Janky granted the Bureau an implied
non-exclusive license to a revised, copyrighted song, and if
granted, the scope of that license.  On March 16, 2007, at the
conclusion of the trial, Janky was awarded $100,000 in damages.
This amount was reduced to set off the sanctions that had been
imposed on Janky.  A final judgment was entered in the amount of
$87,701.50.  Janky's current motion, filed on April 2, 2007,
seeks costs, attorney fees, and prejudgment interest.

Janky and defendant Henry Farag were members of Stormy
Weather, a musical group.  At rehearsal one evening, Farag
announced that the Bureau was looking for a song to represent
Lake County.  As a result of the announcement, Janky wrote the
music and lyrics of the song "Wonders of Indiana" a/k/a "Indi-
ana."  On May 6, 1999, without the assistance of counsel, Janky
obtained a copyright for that musical work (Pau2-397-856),
indicating that she was the author.  Subsequently, Farag offered
his ideas and suggestions for revising the lyrics of "Wonders of
Indiana" in order to comply with the Bureau's requirements.
Janky incorporated the suggestions, which she stated constituted
a 10% revision of the song's lyrics.  Janky prepared a new
copyright registration form for the revised song and signed both
her and  Farag's names on the form.  On December 16, 1999, Janky
obtained a copyright for the revised song (Pau2-485-026).  On the
face of the registration, Janky gave herself credit for the music

2

and lyrics and gave Farag credit for 10% of the lyrics, noting "additional lyrics/(joint work)."  In addition, though initially submitted in December 1999, this registration was returned to Janky as incomplete and properly resubmitted by her in July 2000. Both Janky and Farag are listed on the copyright registration as copyright claimants.  Later, Janky stated that her intent in including Farag on the December 16, 1999 registration was merely to indicate her gratitude.

On July 15, 2003, Janky submitted a third copyright registration for the work "Indiana (Wonders of)," listing a "contents title" of "Lake County."  She identified only herself as the author of the music, lyrics, and "arrangement performance."  On the registration, she acknowledged the May 1999 registration (Pau2-397-856) as the previous registration, and then indicated that the derivative work was a sound recording based on that registration.

Street Gold Records released the revised song on the "Doo-It Doo-Wop" album, performed by Stormy Weather, of which both Farag and Janky were members.  The CD has a copyright of 2000 and lists Janky and Farag as authors of the revised song and Farag Music BMI as the publisher of the revised song.

The group Stormy Weather also recorded a video, which included the song *Lake County, Indiana*.  Farag produced the video.  In an agreement between the Bureau and Farag, the Bureau paid for the video and advertised the group in exchange for a non-exclusive license to use the revised song.  There are no

written agreements between Janky, Farag, or Street Gold Records regarding the playing or performing of the video.

The Bureau used the revised song as part of an audio soundtrack for a twelve-minute video that was being used to promote tourism, sold copies of the album "Doo-It Doo-Wop" at the Welcome Center, and used the song as telephone background music for customers placed on hold.  However, the Bureau ceased using the song entirely when it received notice of the lawsuit in 2003.

Farag is the sole owner of Street Gold Records.  He stated that Street Gold Records was responsible for producing, manufacturing and marketing the albums produced by Stormy Weather.  He also stated that as owner, or co-owner, of the revised song, he issued a non-exclusive license to the Bureau to play the song in question at the Welcome Center, at functions, in promotional ads, and to individuals who called the Welcome Center and were placed on hold.  Janky alleged that Farag licensed and sold the rights to the revised song to the Bureau without her knowledge.

<u>Discussion</u>

Section 505 of the Copyright Act authorizes the court, in its discretion, to award costs and attorney fees to the prevailing party in an infringement suit.  17 U.S.C. §505.  The "prevailing party" for purposes of the Copyright Act's cost and attorney fee provision is considered "one who succeeds on a significant issue in the litigation after an adjudication on the merits." ***NLFC, Inc. v. Devcom Mid-America, Inc.***, 916 F.Supp. 751, 756 (N.D. Ill. 1996).  Once the prevailing party is determined,

4

the court looks to whether that party timely registered the
copyright at issue.  In part, Section 412 of the Copyright Act
provides that no award of attorney fees shall be made for "(1)
any infringement of copyright in an unpublished work commenced
before the effective date of registration; or (2) any infringe-
ment of copyright commenced after first publication of the work
and before the effective date of its registration, unless such
registration is made within three months after the first publica-
tion of the work."  17 U.S.C. §412.

   "The effective date of a copyright registration is the day
on which an application, deposit, and fee, which are later
determined by the Register of Copyrights or by a court of compe-
tent jurisdiction to be acceptable for registration, have all
been received in the Copyright Office." 17 U.S.C. §410(d).
"Where the three necessary elements are received at different
times, the date of receipt of the last of them is controlling,
regardless of when the Copyright Office acts on the claim."  17
U.S.C. §410(d); 1976 Acts Notes of Committee on the Judiciary,
House Report No. 94-1476.

   The statute further defines "Publication" as "the distribu-
tion of copies . . . of a work to the public by sale or other
transfer of ownership, or by rental, lease, or lending.  The
offering to distribute copies . . . to a group of persons for
purposes of further distribution, public performance, or public
display, constitutes publication."  17 U.S.C. §101. The statute
expressly notes that "[a] public performance or display of a work

5

does not of itself constitute publication." 17 U.S.C. §101. In
***Zito v. Steeplechase Films, Inc.***, 267 F.Supp.2d 1022, 1026 (N.D.
Cal. 2003), the court stated:

> Even though this definition does not explic-
> itly require that the distribution of a copy-
> righted work be made under the authority of
> the copyright owner for a distribution to
> constitute publication, "[t]his, however, is
> undoubtedly implied. Congress could not have
> intended that the various legal consequences
> of publication under the current Act would be
> triggered by an unauthorized act of an in-
> fringer or other stranger to the copyright."
>
> ***Zito***, 267 F.Supp.2d at 1026 (*quoting* 1 Mel-
> ville B. Nimmer & David Nimmer, Nimmer on
> Copyright §4.04 (2002))

*See also* ***Einhorn v. Mergatroyd Productions***, 426 F.Supp.2d 189,
196-97 (S.D.N.Y. 2006) (stating that posting of performances of
play on the Internet was not "publication" because making the
work available on the Internet, even assuming it constituted
"distribution," did not involve sale or other transfer of owner-
ship, or by rental, lease, or lending).

If it is determined that the prevailing party has timely
registered the copyright, then the court, in its discretion,
must look to a set of nonexclusive factors to guide its determi-
nation of whether attorney fees and costs are appropriate under
the circumstances. *See* 17 U.S.C. §412. There is no dispute that
Janky prevailed at trial. However, the Bureau asserts that its
infringement occurred prior to registration, or if the work is
considered published, any infringement commenced after publica-
tion, but more than three months before the registration oc-

6

curred, thus precluding an award of any attorney fees under 17 U.S.C. §412.

The parties agree that copyright Pau2-485-026 is at the heart of this case.  However, the record is not clear as to the effective date of that registration.  Both parties refer to copyright Pau2-485-026 as the July 2000 registration.  *See* Plaintiff's Motion, p. 11 ("A final version of the revised registration was only accepted on July 11, 2000 and was filed pursuant to instruction from the Library of Congress and without assistance of counsel."); Defendant's Response, p. 6 ("More importantly, Copyright Pau2-485-026 was not accepted by the Copyright Office until July 11, 2000.").  However, the record also includes numerous references to the revised song as the "December 16, 1999 copyright registration." *See e.g.* Order, May 15, 2006 (DE 99) pp. 6, 18, 33; Order, May 15, 2006 (DE 98)  p. 7; Order, March 29, 2006 (DE 88), pp. 7, 8, 13, 16.

This confusion apparently arises from the Certificate of Registration, provided by the Bureau in its Response, which clearly denotes the "effective date of registration" in the upper right hand corner of the document as December 16, 1999.  However, that same certificate also is stamped with "application received" dates of December 16, 1999 and July 11, 2000.  (Def. Resp., Exh. 1, p. 2)  According to Janky, "the [December 16, 1999] registra-tion was returned to Ms. Janky as having been filled out incor-rectly" and subsequently refiled. (Plaintiff's Mot. p. 11)  The correct version of the application was not received by the

7

Copyright office until July 11, 2000, even though the initial version of the application was received on December 16, 1999. Accordingly, the effective date is July 11, 2000.  Janky and the Bureau both rely on this date, despite their disparate purposes.

At trial, Janky provided testimony that on December 1, 1999, at the grand opening of the Welcome Center, the video, which included an audio track of the revised song, was being played. *See* Order, May 16, 2007 (DE 267), p. 5. If July 11, 2000 is the effective date of registration for copyright Pau2-485-026, then Janky is precluded from an award of attorney fees under §412 because the infringing activity necessarily commenced more than three months before that date.  *See e.g.* ***Budget Cinema, Inc. v. Watertower Associates***, 81 F.3d 729, 733 (7th Cir. 1996)("Budget was not entitled to statutory damages or attorney's fees because the alleged infringement commenced before the effective date of Budget's copyright registration.").

The Bureau claims that if there was infringement, it com-menced even before this December 1999 date.  The Bureau stated at trial that by August 1999, it was utilizing the jingle as part of its promotional video when the video premiered at the silver anniversary of Stormy Weather.  (Def. Resp. p. 9)  The Bureau also noted "an article published in the Second Quarter of 1999, which announced to the world LCCVB, working in conjunction with 'Stormy Weather', was using the song *Lake County, Indiana* to promote tourism."  (Def. Resp. p. 9)  If the infringement began as early as August 1999, then even if the registration was

8

considered effective as of December 1999, Janky still is precluded from an award of attorney fees under §412.

However, no exhibits are attached referencing such testimony, nor is the article attached as an exhibit, nor are specific dates mentioned in regard to either assertion.  In addressing an earlier motion for summary judgment, Judge Cherry concluded that there was not "any infringing conduct by LCCVB [the Bureau] at the time Ms. Janky filed the December 1999 copyright registration."  *See* Order, May 15, 2006, (DE 99) pp. 35-36.  Yet by trial, testimony established that at least one instance of infringement occurred on December 1, 1999 at the grand opening of the Welcome Center.  *See* Order, May 16, 2007, (DE 267) p. 6. Assuming the trial testimony correctly established infringement on December 1, 1999, Janky clears the §412 hurdle only if the revised work was *published* at that time and registered within three months of that date.  *See* 17 U.S.C. §412.

Janky, however, presents no argument that the work ever was published. Neither the live performance by Stormy Weather nor the infringing display of the video at the grand opening constitute publication for purposes of §412 analysis under the Copyright Act.  A public performance does not in and of itself constitute publication.  17 U.S.C. §101.  As far as authorization or intent to distribute or sell, Janky testified in a deposition that she recorded the revised song with Stormy Weather at Thunderclap Studios and that the version recorded was strictly an *a capella* "demo" tape to be given to the Bureau *for their review*.  *See*

9

Order, May 15, 2006, (DE 99) p. 10 (emphasis added).  Janky also
stated that it was the only recording of the song that she ever
made.  *See* Order, May 15, 2006, (DE 99) p. 10.   Such testimony
establishes that at the time of the infringement, the revised
work was unpublished, and Janky did not intend to authorize the
Bureau to publish the work.   In addition, on the top left hand
corner of the form in a section entitled "for Copyright Office
use only," the Certificate of Registration itself states "No
publication date given; registered as unpublished." (Def. Resp.
Exh. 1, p. 3)  As such, an infringing use of the *unpublished* work
occurred on December 1, 1999, which was *before* the effective date
of registration on December 16, 1999, and Janky is barred from
recovering attorney fees under Section 412 of the Copyright Act.

However, in light of the questions regarding these dates,
the court notes that even if it were possible to resolve the
questions over publication and registration in Janky's favor,
consideration of the discretionary factors lead to the conclusion
that fees are not warranted in this matter.

Section 505 of the Copyright Act permits an award of attor-
ney fees and costs at the court's discretion.   Unlike other fee
shifting statutes, such an award is not mandatory.   17 U.S.C.
§505.   In assessing an award of fees, the court must look to
several factors that include "frivolousness, motivation, objec-
tive unreasonableness (both in the factual and in the legal
components of the case) and the need in particular circumstances
to advance consideration of compensation and deterrence." ***Gonza-***

10

*les v. Transfer Technologies, Inc.*, 301 F.3d 608 (7th Cir. 2002)
(*citing* **Fogerty v. Fantasy, Inc.**, 510 U.S. 517, 535 n.19, 114
S.Ct. 1023, 1033 n.19, 127 L.Ed.2d 455 (1994)).  The Seventh
Circuit has not limited the list of factors to those set out in
**Fogerty**.  "[This] list, moreover, is nonexclusive and in need of
simplification -  a process begun in this circuit in *Gonzales v.
Transfer Technologies, Inc., supra,* and continued here." **Assess-
ment Technologies of WI, LLC v. WIREdata, Inc.**, 361 F.3d 434,
436 (7th Cir. 2004)(internal citations omitted). In **Assessment
Technologies**, the court stated that the two most important
factors to consider are the strength of the prevailing party's
case and the amount of damages or other relief the party ob-
tained.  **Assessment Technologies of WI, LLC**, 361 F.3d at 436.

In this matter, Judge Cherry found that there was unautho-
rized use by the Bureau, but the nature and extent of that use
was unclear from the record and left to be determined by the
trier of fact.  *See* Order, March 29, 2006, p. 21.  The Bureau
argued that it relied on the face of the registration, which
lists Farag as a co-owner and co-author. However, Judge Cherry
found that Farag was not a joint author of the revised song based
on evidence of Janky's intent regarding the registration, and the
Bureau did not offer any evidence of Farag's intent in rebuttal.
*See* Order, March 29, 2006, p. 18.  Judge Cherry also found that a
genuine issue of material fact existed as to whether Janky
granted the Bureau an implied non-exclusive license to the
revised, copyrighted song, and as to the scope of that license.

11

*See* Order. May 16, 2007, p. 2.  Finally, Judge Cherry also
dismissed all of Janky's state law claims against the Bureau.
Order, March 29, 2006, p. 26. The jury ultimately awarded Janky
$100,000 and found that the revised song was not a work for hire.
The jury also concluded that Janky owned the copyright and that
the Bureau infringed the copyright. However, the case was not as
one-sided as Janky portrays.  Genuine issues of fact were present
regarding a possible license, the potential scope of such li-
cense, and the nature and extent of the infringement.  Those
issues were left for the trier of fact to decide. The fact that
the jury resolved the issues in favor of Janky does not require
an award of attorney fees under §505.

The most persuasive of the factors considered significant to
the Seventh Circuit relates to the amount of damages and other
relief that Janky obtained.  Janky asserts that prevailing
parties are presumptively entitled to attorneys' fees in certain
copyright cases. In support, she relies on *Assessment Technolo-
gies of WI, LLC,*  361 F.3d at 436, but misunderstands the court's
reliance on the "strong presumption" for an award of attorney
fees where the "award or damages recovered is small."  This
principle also is reflected in *Gonzales v. Transfer Technologies,
Inc.*, 301 F.3d 608 (7th Cir. 2002), in which a prevailing plain-
tiff was awarded attorney fees when the judgment awarded was only
$3,000.  *Gonzales*, 301 F.3d at 609. *See also Magnuson v. Video
Yesteryear*, 85 F.3d 1424, 1432 (9th Cir. 1996)(stating, when the
plaintiff was awarded $375, "we are particularly concerned that

12

the small award for damages in this case is insufficient to deter future copyright infringements such as the one at issue here.").

Janky also ignores the distinction the cases present when the defendant prevails. *See **Woodhaven Homes & Realty, Inc. v. Hotz***, 396 F.3d 822, 823 (7th Cir. 2005) (noting that prevailing *defendants* are presumptively entitled to attorney fees and adding that the amount sought, over $220,000, "seems quite excessive") (emphasis added); ***Assessment Technologies of WI, LLC,*** 361 F.3d at 437 ("When the prevailing party is the defendant, who by definition receives not a small award but no award, the presumption in favor of awarding fees is very strong.  For without the prospect of such an award, the party might be forced into a nuisance settlement or deterred altogether from exercising his rights.") (internal quotation and citations omitted).

Janky's award in this case is not small. Further, Janky's award was made against a non-profit entity which did not use the song to generate a substantial cash flow.  By her own admission, "[t]he jury verdict not only compensated Ms. Janky for the 'forced' license fee as her damages for infringement, but she has *had her song returned to her*, where the license to the song alone commands a licensing fee from $12,000.00 to $30,000.00 per year for exclusive use." (Pltf. Mot. p. 9) (emphasis in original). The revised song was used by the Bureau as background music in a twelve minute promotional video to promote Lake County, on CDs exclusively sold at a single welcome center location, and for approximately three years as background music on the telephone

13

for its waiting customers.  Even at the top end of the "licensing fee," the $100,000 verdict is generous.  Janky's assertion is correct: the jury verdict compensated Janky for the infringement, and adequately so.  As noted by the Seventh Circuit, "if the case was a toss-up and the prevailing party obtained generous damages, or injunctive relief of substantial monetary value, there is no urgent need to add an award of attorneys' fees." ***Assessment Technologies of WI, LLC,*** 361 F.3d at 436.  Janky was awarded generous damages in a matter that was not one-sided.

In addition to these primary factors, consideration of additional factors supports the conclusion that fees are not warranted.  *See **Fogerty***, 510 U.S. at 535 n.19, 114 S.Ct. at 1033 n.19. For instance, Janky asserts that fees are warranted because the Bureau's work-for-hire argument was frivolous.  In March 2006, Judge Cherry noted in a footnote that the Bureau had not offered any evidence regarding a work-for-hire defense and could not maintain both a work-for-hire defense and a joint authorship defense.  The court stated that the Bureau therefore had waived its right to assert that the revised song was a work for hire. Order, March 29, 2006, (DE 88)  pp. 12-13, n.2.  Judge Cherry again indicated that the Bureau had waived its right to assert that the revised song was a work for hire on summary judgment. Opinion and Order, September 22, 2006, ( DE 179) p. 4.  However, the issue never was addressed on the merits until the trial, and the court does not feel that the defense rises to the level of "frivolousness" under the meaning of the factors set forth in

14

*Fogerty*. *See e.g.* *NLFC,* 916 F.Supp. at 758 (awarding the pre-
vailing computing consulting company attorney's fees based on
frivolousness because the computer software designer did not
adequately investigate its software infringement charges before
filing a complaint and pursuing litigation, but instead relied
entirely on the "concerns and paranoia" of its licensees); *ERG,
Inc. v. Stern*, 1996 WL 131743 at *3 (N.D. Ill. March 11, 1996)
("[A]lthough plaintiff could have been more precise in its
assignment agreements and in its complaint, the court cannot say
that plaintiff's failure in these regards renders its action
against the defendant frivolous."); *LZT/Filliung Partnership, LLP
v. Cody/Braun & Associates, Inc.*, 117 F.Supp.2d 745, 753 (N.D.
Ill. 2000)(stating that bad blood between parties was not enough
to show frivolousness; the architect genuinely, though mistak-
enly, thought the infringing plans were copied from his plans so
no award of attorney fees).

Further, as reflected in the final pretrial order, contested
issues at trial included "[w]hether Cheryl Janky wrote the re-
vised song as a work-for-hire for the group Stormy Weather and,
if so, whether Henry Farag gave LCCVB permission to use the
revised song;" and "[w]hether Lake County Convention & Visitors
Bureau was justified in believing that it had purchased the song
at issue as a work for hire through Henry Farag/Street Gold
Records/Stormy Weather." While the Bureau ultimately was not
successful on this defense, based largely in part on testimony
from Farag himself, the jury could have concluded Janky wrote the

revised song for Stormy Weather in response to the announcement
Farag made about the Bureau's search for a song to represent Lake
County.  *See* Order, May, 15, 2006, (DE 99) p. 9.  The jury also
could have concluded that the Bureau genuinely believed it was
purchasing the song legitimately based on the relationship
between Janky and Farag.

Janky made a similar argument that the Bureau's assertion of
a co-owner/co-author defense was frivolous and, consequently,
warrants an award of fees.  The evidence at trial indicated there
was no intent to create a "joint work," and the defense was not
included in the final jury instructions.  However, based on the
analysis above, the court does not find that the inclusion of
this defense at trial rose to the level of "frivolousness,"
especially in light of the fact that Janky listed Farag as a co-
owner/co-author on the face of registration Pau2-485-026.  The
court finds that the Bureau's defense of the case as a whole was
not frivolous in light of the conflicting evidence and matters of
credibility of witnesses' testimony regarding genuine issues of
fact which remained for the jury to evaluate.

Janky lists "compensation and deterrence" in bold when
citing the ***Fogerty*** factors but provides no further analysis that
explains why, in light of a large verdict, additional fees are
necessary to meet the goals of compensation or deterrence.  An
award of attorney fees for the purposes of compensation and
deterrence is appropriate in situations where the monetary
damages are small or where the losing party acted willfully or

16

deliberately. *See e.g.* **U.S. Media Corp. v. Edde Entertainment Corp.**, 1998 WL 401532 at *27 (S.D.N.Y. July 17, 1998) (stating that due to the deliberate nature of the video company's standard practice of distributing unlicensed films with nonregistered copyrights, and the modest damages awarded, deterrence was a compelling need in the case); **Magnuson**, 85 F.3d at 1432 (noting that the small award for damages of $375 was insufficient to deter future copyright infringements); **Martin v. City of Indianapolis**, 4 F.Supp.2d 808, 812 (S.D. Ind. 1998), *motion to amend denied*, 28 F.Supp.2d 1098 (S.D. Ind. 1998) *and aff'd*, 192 F.3d 608 (7th Cir. 1999)(prevailing artist entitled to his attorney's fees because $20,000 did not compensate artist for the destruction of a large work of art).

In this instance, the court finds that there is not a specific need to further apply attorney fees and costs as compensation and deterrence. The jury award of $100,000 in this matter is adequate compensation for the infringement, and neither Judge Cherry nor the jury rendered a finding of willfulness on the part of the Bureau.  The award is a sufficient deterrent against future infringements. *See e.g.* **Columbia Pictures Industries, Inc. v. Babella**, 1996 WL 328015 at *5 (N.D. Ill. June 11, 1996) ("In this case, there is no evidence of bad faith or willfulness on the part of the defendants. In addition, the defendants have not acted objectively unreasonable in their defense of this case . . . the court does not believe that awarding attorneys' fees in this case is needed to advance considerations of compensation and

17

deterrence since the underlying judgment of $72,500 sufficiently addresses these interests."); *Columbia Pictures, Inc. v. Tucker*, 1997 WL 779093 at *15 (N.D. Ill. Dec. 11, 1997)("[P]laintiffs have established their entitlement to $115,000 in statutory damages for 115 infringements. Therefore, attorney's fees were not necessary to compensate the plaintiff and the defendant was sufficiently deterred by the substantial award of profits." (internal quotation and citation omitted).

For much of the same reasons, the court does not find that the Bureau's actions were factually or legally unreasonable from an objective point of view.  In *FASA Corp. v. Playmates Toys, Inc.*, 1 F.Supp.2d 859, 864 (N.D. Ill. 1998), the court describes the situation in *Budget Cinema, Inc.*, 81 F.3d 729 as being objectively unreasonable.  "The court noted that the plaintiff had filed both its copyright registration and district court complaint without having any ownership interest in the disputed copyright." *Budget Cinema, Inc*., 81 F.3d at 732. The court further pointed out that there were significant questions about the validity of the copyright and the plaintiff had *"actively misled* the Copyright Office in registering its copyright after the litigation had commenced." *FASA Corp.,* 1 F.Supp.2d at 864. *See also* *Roeslin v. District of Columbia,* 921 F.Supp. 793, 800 (D.D.C. 1995) (The defendant did not act unreasonably in defending this case; it had a colorable claim, albeit one that the Court ultimately rejected, that the DC-790 system was created in the scope of the plaintiff's employment.").

18

Based on a balance of the factors considered above, Janky is not entitled to an award of attorney fees or costs.  Further, no motion is before the court seeking an award of costs pursuant to Federal Rule of Civil Procedure 54(d).  *See also* Local Rule 54.1; ***Fehribach v. Ernst & Young LLP***, ___ F.3d ___, 2007 WL 2033734 at *6 (7th Cir. 2007); ***Park v. City of Chicago***, 297 F.3d 606, 617 (7th Cir. 2002).

<u>Prejudgment Interest</u>

In addition to attorney fees, Janky's motion also is labeled a "request for prejudgment interest." The motion, in seeking two distinct forms of relief, violates this district's local rules. *See* L.R. 7.1(b)("Each motion shall be separate."). However, the greater concern arises because, as a motion seeking prejudgment interest and filed within ten days of the entry of judgment, the court must treat the motion as made under Federal Rule of Civil Procedure 59(e) to alter or amend the judgment, even though Janky never mentions the rule. *See* ***Osterneck v. Ernst & Whinney***, 489 U.S. 169, 176, 109 S.Ct. 987, 992, 103 L.Ed.2d 146 (1989)("Thus we conclude that a postjudgment motion for discretionary prejudgment interest involves the kind of reconsideration of matters encompassed within the merits of a judgment to which Rule 59(e) was intended to apply."); ***Lorenzen v. Employees of Sperry and Hutchinson Company, Inc***., 896 F.2d 228, 231 (7th Cir. 1990) ("[A]ll motions addressed to the judgment that are filed within ten days of the entry of judgment . . . are deemed to be Rule 59(e) motions.").

19

The first concern raised by Janky's Rule 59(e) motion is its affect on the two subsequent notices of appeal. Federal Rule of Appellate Procedure 4 provides that a timely Rule 59(e) motion "suspends the time for appealing a motion and a notice of appeal filed while such a motion is pending is premature." **Katerinos v. United States Department of the Treasury**, 368 F.3d 733, 737 (7th Cir. 2004). However, 1993 amendments to Appellate Rule 4 further provide that a premature appeal is "suspended" during the pendency of the Rule 59(e) motion and "becomes effective . . . when the order disposing of the last such remaining motions is entered." Federal Rule of Appellate Procedure 4(a)(4)(B)(i); **Katerinos**, 368 F.3d at 737-38. Accordingly, though the existing notices of appeal in this matter are premature, their effectiveness is restored with the entry of this order.

Prejudgment interest is presumptively available to victims of Federal law violations. **Gorenstein Enterprises v. Quality Care-USA**, 874 F.2d 431, 436 (7th Cir. 1989); **Hutchison v. Amateur Electronic Supply, Inc.**, 42 F.3d 1037, 1046 (7th Cir. 1994)("If a district court does have discretion in whether to grant or deny prejudgment interest, that discretion is very limited.") In support of this presumption, prejudgment interest is considered necessary to compensate a plaintiff for the lost time value of money and to remove incentives for the defendant to delay. **Shott v. Rush Presbyterian-St. Luke's Medical Center**, 338 F.3d 736, 745 (7th Cir. 2003); **First National Bank of Chicago v. Standard Bank and Trust**, 172 F.3d 472, 480 (7th Cir. 1999). Similarly, when

20

delay is occasioned by the conduct of the plaintiff, the court is within its discretion to limit an award of prejudgment interest. *Matter of Milwaukee Cheese Wisconsin, Inc.*, 112 F.3d 845, 849 (7th Cir. 1997); *Shott*, 338 F.3d at 746.  The rate at which pre-judgment interest is calculated is based upon the prime rate at the time of the violation. *First National Bank*, 172 F.3d at 480 ("We hold today that to set aside this practice and award some-thing other than the prime rate is an abuse of discretion.").

The Bureau argues that the presumption of entitlement to prejudgment interest in this matter is defeated because the jury's award included prejudgment interest. However, the jury's verdict does not indicate that a component of the damages re-flects interest. Rather, the Bureau's argument is based on a comment made by Janky's attorney in closing arguments that the jury should "send a message" to the Bureau, urging the jury to award interest. The jury instructions make no reference to interest, and the denial of the Bureau's motion for a curative instruction regarding the attorney's advice to the jury to "send a message" cannot be read to relate specifically to the question of interest.

The record does not reflect that the jury intended to award interest. The jury was instructed to determine damages Janky was owed because she owned the copyright. Further, the award, though characterized above as "generous," cannot be assumed so generous as to mandate the conclusion that it must contain interest.

The Bureau also argues that prejudgment interest is fore-closed because no willful violation was found. The Seventh Circuit cases do not create a strict requirement of willfulness. The Seventh Circuit has stated that it has "consistently applied the presumption in favor of prejudgment interest for willful violations." *McRoberts Software, Inc. v. Media 100*, 329 F.3d 557, 572 (7th Cir. 2003). The Bureau stretches this statement to argue that, unless willfulness is present, the presumption is non-existent. This is not accurate. *See e.g. First Naitonal Bank*, 172 F.3d at 480 ("[*Goresntein*] does not suggest that good-faith mitigates a losing party's obligation to pay appropriate measure of prejudgment interest.")

In fact, this conclusion follows naturally from the stated purpose of the presumption for prejudgment interest. Whether a plaintiff has been compensated fully is independent from whether that plaintiff's loss was caused by willfulness or mere negligence. Further, while the court does not agree with the statement in *Francois v. Ruch*, 2006 WL 3735950 (C.D. Ill. Dec. 15, 2006) that the "presumption applies only when the violation of federal law was willful," this court notes that in that case, prejudgment interest was denied because of the plaintiff's failure to raise the claim timely. *Francois*, 2006 WL 3735950 at *5. *See also Matter of Wisconsin Cheese*, 112 F.3d at 849 ("[P]rejudgment interest should be awarded unless there is a sound reason not to do so.").

22

Nevertheless, Janky's request for prejudgment interest compounded at a rate of 10% from August 2003 until March 2007 is flawed. First, this matter was filed in the Eastern District of Michigan and, as found by Judge Cherry, unreasonably maintained there for a period beginning in June of 2004. It was not until another year passed that the case was before this court. The purpose of prejudgment interest, making the plaintiff whole, is not served by rewarding an unreasonable delay attributable to the plaintiff and, in fact, sanctioned.

Further, the record continues to include disputes over the date on which the Bureau first infringed Janky's copyright. In her motion, Janky suggests that June of 2002 is that date at which to begin calculating prejudgment interest. However, in her own calculations, she begins in August 2003. The court concludes that, due to the uncertainty in the record and the plaintiff's failure to support an earlier date, prejudgment interest will be calculated beginning in October 2003, when the claim was first filed, and exclude the year-long delay occasioned by the plaintiff.

Finally, the plaintiff, relying on an Indiana Code provision that calls for prejudgment interest between 6% and 10%, assumes a 10% interest rate. Because this court's jurisdiction is based on a federal claim and not diversity jurisdiction, Indiana procedural law has no application to this matter. The rate applicable is the prime rate during the relevant period. *See First National Bank*, 172 F.3d at 480.

Accordingly, the plaintiff's motion for prejudgment interest is **GRANTED IN PART** and **DENIED IN PART**. The prior judgment in this matter, $87,701.50, is amended to include prejudgment interest for the period of October 2003 through June 2004 at a rate of 4.0%, the average prime rate during this period, namely $2,698.68. The resulting amount, $90,400.18, is subject to prejudgment interest for the period of time from June 2005 through judgment at an average rate of 7.56%. Compounded annually, this results in an additional $12,857.11. Accordingly, the clerk is **DIRECTED** to enter a final judgment in this matter for $102,897.29.

_____

For the foregoing reasons, the Motion for Attorney Fees and Costs Under 17 U.S.C. §505; Request for Prejudgment Interest filed by the Plaintiff, Cheryl Janky, on April 2, 2007, is **DENIED**. Janky's motion for prejudgment interest is **GRANTED IN PART** and **DENIED IN PART**. The clerk is **DIRECTED** to enter an amended judgment in this matter in the amount of $102,897.29.

ENTERED this 20th day of August, 2007

s/ ANDREW P. RODOVICH
United States Magistrate Judge

24