UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

CHERYL JANKY,                    )
                                 )
            Plaintiff            )
                                 )
      v.                         )  Case No. 3:05-cv-217
                                 )
LAKE COUNTY CONVENTION &         )
VISITORS BUREAU,                 )
                                 )
            Defendant            )

OPINION AND ORDER

This matter is before the Court on the Motion for Fees and
Costs for Having to Defend Against Defendant's Motion for Attor-
ney Fees Pursuant to 28 U.S.C. §1927 Fees, filed by the plain-
tiff, Cheryl Janky, on August 10, 2007 (DE 326); the Second
Motion for Costs and Attorney Fees Pursuant to Federal Rule of
Civil Procedure 11 filed by the defendant, Lake County Convention
& Visitors Bureau, on November 1, 2007 (DE 354); and the Motion
for Reconsideration of the Court's August 20, 2007 Order filed by
the plaintiff on September 4, 2007 (DE 343).  For the reasons set
forth below, all three motions are **DENIED**.

Background

This case arises from a copyright dispute between the plain-
tiff, Cheryl Janky, and the defendant, Lake County Convention and
Visitors Bureau.  The procedural background and facts are taken,
in part, from previous court orders.  On October 3, 2003, Janky
filed a complaint against the Bureau in the United States Dis-

trict Court for the Eastern District of Michigan[1].  After juris-
dictional disputes which resulted in sanctions against Janky, the
matter was transferred to the Northern District of Indiana on
March 31, 2005.  Following summary judgment motions and motions
for reconsideration, all of Janky's state law claims against the
Bureau were dismissed, leaving only the federal copyright claim.
The court, through Magistrate Judge Paul R. Cherry, found that a
genuine issue of material fact existed as to whether Janky grant-
ed the Bureau an implied non-exclusive license to a revised,
copyrighted song, and as to the scope of that license.

Beginning on March 12, 2007, this case was tried to a jury.
On March 15, 2007, at the end of the fourth day of trial and at
the conclusion of all the evidence, Judge Cherry dismissed the
jury for the evening.  Judge Cherry then asked the parties and
their attorneys if they would be interested in participating in a
settlement conference before submitting the case to the jury.
Both parties and all attorneys agreed.  Janky, Speros Batistatos
for the Bureau, and Judge Cherry, discussed settlement. During
the conference, the participants discussed various proposed
settlement amounts, but the case was not resolved.  (Order, June
5, 2007, p. 2; *See* DE-280)

On March 16, 2007, the jury returned a verdict in favor of
Janky and against the Bureau in the amount of $100,000.  This
amount was reduced to set off the sanctions that had been imposed

---

[1] Henry Farag and Street Gold Records were removed as parties in this
action, leaving the Bureau as the sole defendant.

on Janky and a final judgment was entered in the amount of
$87,701.50.

Thus began the battle over fees and costs.  On April 2,
2007, the Bureau moved for an award of fees under 28 U.S.C. §1927
claiming that Janky's attorneys had multiplied the proceedings
unreasonably and vexatiously by failing to communicate settlement
offers to Janky.  The Bureau based this motion on Janky's state-
ment during the settlement conference.  Specifically, the Bureau
asserted that Janky stated she had "never gotten any settlement
offers" from her attorneys.  (Lake County Mot. for Fees, p. 2;
DE-250)  Janky, through her attorneys, later claimed that settle-
ment offers had been conveyed to her repeatedly during the case.

In light of this factual dispute, Judge Cherry recused
himself from the case.  The Bureau's motion for fees was set for
a hearing on August 2, 2007.  On July 27, 2007, Janky filed an
"expedited" motion to quash subpoenas that had been served on
Judge Cherry and his staff, and a second motion, termed an
"expedited motion to dismiss" the hearing based upon evidentiary
objections and what Janky had termed Judge Cherry's violation of
judicial cannons.  On July 30, 2007, Janky filed a third motion,
this time seeking to disqualify Judge Cherry under the recusal
statute, 28 U.S.C. §455, despite Judge Cherry's previous recusal.
The court reaffirmed the hearing and ordered Janky's attorneys to
show cause why they should not be sanctioned under Rule 11 based
on the frivolous nature of their third motion.

The evidentiary hearing was held on August 2, 2007.  The
court imposed sanctions on Janky's attorneys after they failed to
show a valid basis for the challenged motion.  During the hear-
ing, Janky testified, and after direct and cross examination,
this court concluded that Janky stated during the settlement
conference with Judge Cherry that her attorneys had not communi-
cated any settlement offers to her.  However, this court subse-
quently concluded that Janky was mistaken and/or confused when
she made the statement.  Accordingly, the court denied the
Bureau's motion for fees.  (DE-323)  Following the hearing, the
basis for the Rule 11 sanctions against Janky's attorneys,
specifically the frequent assertion of frivolous arguments at or
near the eve of hearings or deadlines, was reaffirmed in an Order
dated August 14, 2007.  (DE-329)

On the same day the Bureau filed its Motion for fees under
§1927, Janky filed her own motion seeking costs, attorney fees,
and prejudgment interest under 17 U.S.C. §505.  (DE-252)  On
August 20, 2007, the court issued an order denying Janky's motion
for attorney fees and costs while granting in part and denying in
part Janky's request for prejudgment interest.  The prior judg-
ment was amended to include prejudgment interest which resulted
in a judgment of $102,897.29.

<u>Discussion</u>

**Janky's Fee Request**

Janky requests fees against the Bureau for filing a frivo-
lous motion.  Section 1927 states that any attorney who "multi-

4

plies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." This Circuit has held that both subjective bad faith and objective bad faith may be actionable. *Dal Pozzo v. Basic Machinery Co., Inc*., 463 F.3d 609, 614 (7th Cir. 2006). Subjective bad faith is not always necessary. *See Hill v. Norfolk & Western Railway Co.,* 814 F.2d 1192, 1202 (7th Cir. 1987); *Westinghouse Electric Corporation v. NLRB,* 809 F.2d 419, 425 (7th Cir. 1987). *See also Moriarty v. Svec,* 429 F.3d 710, 722 (7th Cir. 2005). "Subjective bad faith or malice is important only when the suit is objectively colorable." *In re TCI Ltd*., 769 F.2d 441, 445 (7th Cir. 1985).

A court has discretion to impose §1927 sanctions when an attorney has acted in an "objectively unreasonable manner" by engaging in "serious and studied disregard for the orderly process of justice." *Jolly Group, Ltd. v. Medline Industries, Inc.*, 435 F.3d 717, 720 (7th Cir. 2006) (internal citation omitted). Section 1927 sanctions can be imposed when a party pursues a claim that is "without a plausible legal or factual basis and lacking in justification." *Pacific Dunlop Holdings, Inc. v. Barosh,* 22 F.3d 113, 119 (7th Cir. 1994) (citations omitted). Additionally, such sanctions can be imposed if a lawyer pursues a path that a "reasonably careful attorney would have known, after appropriate inquiry, to be unsound." *Kapco Manufacturing Company, Inc. v. C & O Enterprises, Inc.*, 886 F.2d 1485, 1491 (7th

Cir. 1989).  The Seventh Circuit has upheld sanctions where
"counsel acted recklessly, counsel raised baseless claims despite
notice of the frivolous nature of these claims, or counsel
otherwise showed indifference to statutes, rules, or court
orders." *Claiborne v. Wisdom*, 414 F.3d 715, 721 (7th Cir. 2005).
The purpose of §1927 "is to deter frivolous litigation and
abusive practices by attorneys and to ensure that those who
create unnecessary costs also bear them." *Riddle & Associates,
P.C. v. Kelly*, 414 F.3d 832, 835 (7th Cir. 2005) (citations
omitted).

   In the circular manner that has come to characterize this
case, Janky seeks attorney fees under §1927 for having to defend
against the Bureau's motion for fees under §1927.  Janky asserts
that the Bureau's motion was objectively unreasonable because it
was based on "two unreliable sources." (Pltf Mot. for Fees and
Costs, p. 2)  Janky next asserts that because the motion was
premised on her statement that she had not received "any offer,"
the Bureau acted with "egregious conduct" by making the "outra-
geous" and "slanderous" statement the basis for its motion. (DE-
326-1)  Janky next asserts abuse of process and conspiracy claims
against the Bureau for "boldly stating" that a client did not
receive one offer during the litigation period.  Janky states,
"It is the most extreme and outrageous conduct in how not to
fabricate a law case in a college class 101 in filing a claim
under 28 U.S.C. §1927 . . . ." (Pltf. Brief in Supp. of Mot. for
Fees, p. 4; DE 326)  Janky asserts that the Bureau had "actual

6

office files" in its possession that supported the various offers
Janky received from her attorneys.  To maintain this position,
Janky attaches almost 80 pages of correspondence on counsel's
letterhead to her motion that have "cc notations." (Brief in
Supp., Exh. E)  Finally, Janky states that the Bureau has become
"reckless, objectively unreasonable, bolder, cavalier, aloof and
emboldened, filing more frivolous and outlandish motions . . .
[p]articularly, on the premises that Plaintiff, out of four (4)
years of litigation did not receive any offer from her counsel!
How absurd can an officer of the court be." (Brief in Supp. p. 6)

Leaving the rhetorical flourishes aside, Janky's entire
argument for §1927 sanctions is premised on an erroneous theory.
Janky's motion fails to acknowledge that this court concluded
that Janky made the statement that her attorneys had not communi-
cated any settlement offers to her.  In fact, during the August
2, 2007 evidentiary hearing, Janky admitted making the statement
but testified that she was confused and upset at the time because
of the stress of the trial.  Additionally, in the Declaration of
Cheryl Janky submitted as Exhibit B (DE-326-5), Janky admitted
that when she was asked if she had gotten all of the Bureau's
substantial offers, she replied "no I didn't" a few times.  She
also recalls crying and being very upset[2].  Also, in a letter to

---

[2]In her motion for fees, Janky states that the "Defendant's CEO in his
declaration stated an organization such as LCCVB will tie you up in litigation
and prolong matters unnecessarily.  This is a clear example of Defendant's
state of mind that the CEO will unnecessarily prolong matters." (DE-326-1).
The court has read through 175 pages of Janky's exhibits and has failed to
find such a statement made by Batistatos in his declaration.  (*See* DE-326-10)
Janky made a similar statement in her declaration regarding Batistatos.  (*See*
DE-326-5)  However, this unverified allegation is hardly a "clear example" of

the court written by Judge Cherry for the purpose of correcting
false allegations and inaccurate references made in Janky's
motion to disqualify him, Judge Cherry wrote, "During the March
15, 2007 settlement conference Cheryl Janky stated that her
attorneys had not communicated any settlement offers to her."
(DE-325)

Regardless of the fact that Janky was distraught and crying,
the claim that the Bureau's motion was objectively unreasonable
because it was based on "unreliable sources" is without merit[3].
Janky made the statement herself.  She admitted doing so in her
declaration and in the evidentiary hearing.  Judge Cherry's
letter also supports this fact.  It is not objectively unreason-
able that the Bureau would pursue fees based on such a verified
statement.  The volume of settlement letters presented by Janky
in her exhibits does not negate the fact that Janky made the
statement during the settlement conference.  The "cc" notations
at the bottom of the correspondence between the various law
offices do not establish that Janky ever received the offers from
her attorneys in light of the fact that she made a verified

---

the Bureau's state of mind attributable to Batistatos himself as is suggested
in Janky's brief.  The court will give Janky the benefit of the doubt that
this was a typographical mistake and not an intentional misstatement of the
record.

[3]Janky's Motion for Fees also claims that the Bureau based its motion on
the "unreliable source" of a newspaper article which stated that Janky's
counsel would have settled the case for $50,000.  Because this court is
satisfied that both Janky and Judge Cherry are reliable sources that verify
Janky's statement, the court will not discuss the assertions that the Bureau
should be sanctioned for using an "impermissible" newspaper article.  It
should be noted, however, that there is a difference between considering a
newspaper article as substantive evidence and for the non-hearsay affect it
may have on the reader.

statement to the contrary.  Further, correspondence between
Janky and her counsel regarding settlement offers was not avail-
able to the Bureau at the time it filed its motion for fees[4].
Therefore, while this court did determine during the evidentiary
hearing that Janky made the statement *mistakenly* and thus did
actually receive settlement offers, the Bureau was not objec-
tively unreasonable in pursuing fees up until the August 2, 2007
hearing.

Janky's assertions of slanderous statements and egregious
conduct by the Bureau are unfounded for the same reason as above.
Janky made the statement regarding non-receipt of settlement
offers, and it is not unreasonable for an attorney to rely on
that statement.  The Bureau did not make the "slanderous" state-
ment; the attorney's client did.  The same is true for Janky's
conspiracy and abuse of process claims.

The court is satisfied that Janky stated during the settle-
ment conference that she had not received any settlement offers
from her attorneys, and the Bureau acted neither unreasonably nor
vexatiously in pursuing fees under §1927.  Ultimately, it was
shown that Janky received settlement offers from her attorneys,
and it may have been possible to assume, even without such proof,
that during the course of a three and a half year litigation she
had received such offers.  However, Janky's statement created a

---

[4]On August 1, 2007, the day before the evidentiary hearing, Janky filed
a checklist of "42 communicated offers."  Some examples of letters between
Janky and her attorneys were produced at the hearing and later were filed as
exhibits with her current motion for fees.

reasonable dispute that the Bureau was entitled to pursue. Janky's fee request is **DENIED**.

### The Bureau's Motion for Fees

In characteristic fashion, the Bureau has filed a motion for costs and attorney fees pursuant to Rule 11 based on Janky's fee request.  Rule 11(b) requires that an attorney certify that to the best of his knowledge, information, and belief, formed after a reasonable inquiry, the pleading is not being presented for an improper purpose such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation, that the claims and contentions are warranted by law, and that the allegations and other factual contentions are supported by the evidence.  The rule goes on to describe appropriate sanctions and provides that "[i]f, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the viola-tion." Rule 11(c).

A district court's decision to impose Rule 11 sanctions is reviewed under an abuse of discretion standard. *Cooter & Gell v. Hartmarz Corp.,* 496 U.S. 384, 405, 110 S.Ct. 2447, 2460-61, 110 L.Ed.2d 359 (1990); *Cuna Mutual Insurance Society v. Office and Professional Employees International Union, Local 39*, 443 F.3d 556, 560 (7th Cir. 2006).  "Because the district courts have the best information about the patterns of their cases, they are in the best position to determine whether a legal position is far

10

enough off the mark to be frivolous or whether an attorney
conducted an adequate inquiry under the particular circumstances
of a case." *Corley v. Rosewood Care Center, Inc. of Peoria*, 388
F.3d 990, 1013 (7th Cir. 2004) (citation omitted).  Rule 11
sanctions do not require a finding of bad faith.  In evaluating
whether sanctions are appropriate under Rule 11, the court must
"undertake an objective inquiry into whether the party or his
counsel should have known that his position [was] groundless."
*National Wrecking Company v. International Brotherhood of Team-
sters, Local 731*, 990 F.2d 957, 963 (7th Cir. 1993) (citations
omitted).  However, a finding of objective frivolity supports,
but does not compel, an inference of unreasonable investigation.
"How much investigation should have been done in a given case
becomes a question of line-drawing, as much a matter of 'fact' as
is the purpose behind the paper." *Mars Steel Corp. v. Continental
Bank N.A.* 880 F.2d 928, 933 (7th Cir. 1989) ("Whether counsel did
an appropriate amount of pre-filing investigation, and whether a
legal position is far *enough* off the mark to be 'frivolous' are
fact-bound. Whether the lawyer 'went too far' (or 'didn't do
enough') is inevitably a judgment call.").

On August 20, 2007, the Bureau sent Janky a letter describ-
ing her potential Rule 11 violations and requesting that she
withdraw her §1927 request for fees.  This letter served as
proper notice under the "safe harbor" provisions of Rule 11.
Janky chose not to withdraw her request for fees, and the Bureau
filed the instant motion on November 1, 2007.  The Bureau asserts

11

Janky's fee request is wholly unsupported in law or fact and that her refusal to withdraw the motion should be declared frivolous, unnecessary, and a vexatious multiplication of litigation. (DE-355)  The Bureau bases this assertion on the fact that Janky's fee request was premised on meritless grounds because it was determined that Janky did make the statement she had not received any settlement offers.  Therefore, the Bureau concludes, the statement was not "allegedly" made by an "unreliable" source as stated by Janky in her request for fees.  The Bureau goes on to discuss the other contentions made in Janky's fee request and dismisses them by concluding that the Bureau's own §1927 motion was based on the fact that Janky had made the statement that she had not received any settlement offers and not on a newspaper article or on the fact that Janky had not accepted the Bureau's $50,000 offer as is suggested in Janky's fee request.

In response, Janky states that the Bureau had more than ten settlement offer letters in its files from Janky's counsel to the Bureau's counsel expressly stating on their face that copies of the correspondence had been sent to Janky.  Janky asserts that the Bureau feigned ignorance of the letters when it filed its motion.  Janky next claims that as a result of the Bureau's fee request, Judge Cherry believed that he and his staff would be necessary fact witnesses in the evidentiary hearing.  Because of such belief, Janky's argument continues, the case had to be reassigned after Judge Cherry's recusal.  This, Janky claims, unreasonably and vexatiously multiplied the proceeding.

The court agrees with the Bureau that Janky's argument is based on an incorrect assumption.  In her response, Janky vehemently asserts that the Bureau knew that settlement offers had been communicated to Janky by her counsel because the letters in their files indicated that "*carbon copies[5] of each letter had been forwarded to Janky!*" (emphasis and bold in original) (Brief in Supp. of Pltf Resp., p. 3; DE 356).  As discussed in the analysis for Janky's fee request above, placing "cc" notations on the bottom of a letter does not conclusively prove that Janky ever received those letters from her attorneys, especially in light of the fact that she made a statement to the contrary. Judge Cherry recused himself, and an evidentiary hearing was conducted because Janky's statement, which Judge Cherry personally witnessed, created a reasonable factual dispute.  The Bureau did not order the evidentiary hearing, the court did.

However, Rule 11 sanctions do not follow inevitably from the conclusion that Janky's argument is premised on an incorrect assumption.  As the Seventh Circuit has recognized, positions rarely are frivolous in the abstract.  The court must determine how *far* from the correct legal position one is to qualify for Rule 11 sanctions.  *Mars Steel Corp.,* 880 F.2d at 934.  This question becomes compounded when the course of the particular litigation is viewed as a whole.  Throughout this matter, attorneys for both the Bureau and for Janky have filed numerous

---

[5] Based upon today's technology, it is highly doubtful that carbon copies were sent to Janky.  In the event that a young reader of this order does not understand that term, he can Google it.

motions rehashing virtually every ruling that was unfavorable to
their position. (*See Corley*, 388 F.3d at 1012-15 (upholding the
district court's discretionary denial of §1927 and Rule 11
sanctions because, viewing the case as a whole, the court did not
believe that the claims were filed in bad faith or for an im-
proper purpose or without adequate investigation.). Because
Janky's counsel's assumption that "cc" notations on correspon-
dence indicate definitively that the Bureau knew that Janky had
been notified of the offers is incorrect, the thrust of Janky's
reasoning for her motion falls short of the mark.  However,
viewing the case as a whole and in light of the confrontational
nature of all parties participating in these proceedings, the
court does not feel that Janky's request for fees was so far
removed from the correct legal position as to warrant Rule 11
sanctions.  Therefore, the Bureau's fee request is **DENIED.**

    The court expects that the denial of both Janky's fee
request and the Bureau's fee request will put an end to this
ping-pong match regarding fees.  A request for attorney fees or
awards of attorney's fees as sanctions under Rule 11 should not
result in a second major litigation. *Divane v. Krull Electric
Co.*, 319 F.3d 307, 314 (7th Cir. 2003)("[F]ee litigation can turn
a simple civil case into two or even more cases - the case on the
merits, the case for fees, the case for fees on appeal, the case
for fees for proving fees, and so on ad infinitum, or at least ad
nauseam.")(internal quotations omitted).  While the court has
declined to impose sanctions on either party at this time, Janky

14

and the Bureau should be forewarned that any future motions they
may file regarding fee and sanction requests will be closely
examined.

### Janky's Motion for Reconsideration

Finally, Janky has moved for reconsideration of the August
20, 2007 order which denied Janky's request for attorney fees
under 17 U.S.C. §505 of the Copyright Act.  Although they are
frequently filed, the Court of Appeals has described a motion for
reconsideration as "a motion that, strictly speaking, does not
exist under the Federal Rules of Civil Procedure." *Hope v. United
States*, 43 F.3d 1140, 1142 n.2 (7th Cir. 1994). *See also Talano
v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757,
760 n.1 (7th Cir. 2001).  This type of motion "is a request that
the [Court] reexamine its decision in light of additional legal
arguments, a change of law, or perhaps an argument or aspect of
the case which was overlooked." *Ahmed v. Ashcroft*, 388 F.3d 247,
249 (7th Cir. 2004) (internal quotation omitted).  In *Frietsch v.
Refco, Inc.*, 56 F.3d 825 (7th Cir. 1995), the Court of Appeals
did not question the availability of a motion to reconsider but
stated:

> It is not the purpose of allowing motions for
> reconsideration to enable a party to complete
> presenting his case after the court has ruled
> against him.  Were such a procedure to be
> countenanced, some lawsuits really might
> never end, rather than seeming endless.
>
> *Frietsch*, 56 F.3d at 828

*See also Oto v. Metropolitan Life Insurance Company*, 224 F.3d

601, 606 (7th Cir. 2000) ("A party may not use a motion for
reconsideration to introduce new evidence that could have been
presented earlier."); *Divane v. Krull Electric Company*, 194 F.3d
845, 850 (7th Cir. 1999); *LB Credit Corporation v. Resolution
Trust Corporation*, 49 F.3d 1263, 1267 (7th Cir. 1995).  Ulti-
mately, a motion for reconsideration is an "extraordinary remedy
to be employed sparingly in the interests of finality and conser-
vation of scarce judicial resources." *Global View Ltd. Venture
Capital v. Great Central Basin Exploration*, 288 F.Supp.2d 482,
483 (S.D.N.Y. 2003) (internal quotation omitted).

Janky has brought this motion under Federal Rule of Civil
Procedure 59 and again has failed to address the legal standard
under which a motion to reconsider is addressed.  Rule 59 re-
quires that she show a "manifest error of law or an intervening
change in the controlling law or present newly discovered evi-
dence." *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1121 n.3
(7th Cir. 2001) (*citing Cosgrove v. Bartolotta*, 150 F.3d 729, 732
(7th Cir. 1998).  But a Rule 59(e) motion "is not appropriately
used to advance arguments or theories that could and should have
been made before the district court rendered a judgment." *County
of McHenry v. Insurance Co. of the West*, 438 F.3d 813, 819 (7th
Cir. 2006) (*citing LB Credit Corporation,* 49 F.3d at 1263.

Janky argues that the decision to deny her the award of
attorney fees was erroneous. First, she states that "[w]hile a
*revised* copyright registration, concerning a derivative work with
altered or additional lyrics was not completed until July 11,

16

2000, the effective date of the copyright is regardless May 6,
1999, *which is the law of this case*." (DE-343-1) (emphasis in
original).  Janky proceeds to quote 17 U.S.C. §412 of the Copy-
right Act.  Without offering any legal analysis whatsoever of the
statute, she concludes that the "entire analysis . . . is inappo-
site and tangential." (Mot. for Reconsideration, p. 2; DE-343)
Janky does not cite a single case to support her position nor has
she provided any relevant arguments that could or should have
been made before the court rendered its decision.  It is notable
that Janky has not filed a Reply to the Bureau's Response to
Janky's Motion for Reconsideration.  In fact, when this issue
first was raised by the Bureau in response to Janky's original
motion for attorney fees, Janky did not file a reply at that time
either.  A reply would have been the appropriate time to raise
any arguments on Janky's part.  Janky did not do so and has
offered no logical reasoning in her current motion for this
failure.

Janky originally requested fees under §505 which authorizes
the court, in its discretion, to award costs and attorney fees to
the prevailing party in an infringement suit.  Although Congress
established a voluntary registration system for copyrights, it
created incentives for copyright owners to register their copy-
rights: certain benefits flow only to those who register their
copyright.  The award of attorney fees under §505 is one of those
benefits, subject to certain restrictions.  Section 412 is one
such restriction and states, in part, that no award of attorney

fees shall be made for "(1) any infringement of copyright in an unpublished work commenced before the effective date of registration; or (2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  If it is determined that the prevailing party timely registered the copyright, then the court, in its discretion, must look to a set of nonexclusive factors to guide its determination of whether attorney fees and costs are appropriate under the circumstances.

Case law regarding the application of §412 to a request for fees under §505 is not plentiful.  The Seventh Circuit has not directly addressed the specific issue that Janky has raised: whether the application of §412 bars the award of attorney fees under §505 if the sole copyright infringement was to an unregistered (at the time of infringement) *derivative* work.  Several Circuit Court cases do address whether a separate registration for a derivative work is required as a prerequisite for filing suit in federal courts under §411.

Section 411(a) is a jurisdictional restriction and provides, in relevant part, that "no action for infringement of the copyright in any United States work shall be instituted until preregistration or registration of the copyright claim has been made in accordance with this title."  This section is separate from copyright rights and speaks directly to registration.  The Sixth Circuit has held that separate registration for derivative works

18

is a jurisdictional prerequisite to bringing a copyright in-
fringement suit to that work, suggesting that derivative works
are distinct from preexisting works.  "Before an infringement
suit can be sustained based on the derivative work, that deriva-
tive work must be registered . . . . [I]t is logical that the
registration of the derivative work would relate back to include
the original work, while the registration of the original mate-
rial would not carry forward to new, derivative material." *Murray
Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622
(6th Cir. 2001) (stating the jurisdictional registration require-
ments are separate from copyright status).  *See also Creations
Unlimited, Inc. v. McCain*, 112 F.3d 814, 816 (5th Cir. 1997).
Additionally, in a recent Second Circuit case, the court con-
cluded that the existence of a claim based on a registered
copyright does not bring within a district court's jurisdiction
all related claims stemming from unregistered copyrights:

> There, the plaintiff brought two infringement
> claims: one based on the infringement of its
> *registered* copyright in a 20-inch doll, the
> other based on the infringement of its *unreg-
> istered* copyright in a derivative 48-inch
> doll.  The district court decided the first
> claim on the merits but dismissed the second
> claim for lack of jurisdiction.  We affirmed
> on both scores.  We specifically upheld the
> dismissal, for lack of jurisdiction, of the
> claim based on the unregistered copyright
> even though the plaintiff had paired that
> claim with a related claim stemming from the
> registered copyright in the 20-inch doll.
> Thus, the existence of a claim based on a
> registered copyright does not bring within a
> district court's jurisdiction all related
> claims stemming from unregistered copyrights.

19

*In re Literary Works in Electronic Databases Copyright Litigation*, 509 F.3d 116, 122 (2d Cir. 2007) (discussing *Well-Made Toy Mfg. Corp v. Goffa Intern. Corp.*, 354 F.3d 112, 116 (2d Cir. 2003)

On the other hand, the Fourth Circuit has ruled that a party has standing to sue on all components of a registered derivative work if he owns a copyright in those components, even if the underlying components have not been registered. *Christopher Phelps & Associates, LLC v. Galloway*, 492 F.3d 532, 538-39 (4th Cir. 2007) (*citing Xoom v. Imageline, Inc.*, 323 F.3d 279, 283-84 (4th Cir. 2003). However, the *Phelps* case can be distinguished because the plaintiff held a registered copyright in the modified or derivative house design, and the court was concerned with determining the correct amount of protection for that design. The court concluded that because the plaintiff had copyright protection in the unregistered underlying work, the copyright protection in the registered modified work extended to all components of that modified work, not just the modified part. *Christopher Phelps & Associates, LLC*, 492 F.3d at 538.

Looking to the Copyright Act itself, the statutory damages provision of §504(c) states that all derivative works constitute one work "for the purposes of this subsection." The attorney's fees provision of §505, which was adopted along with §504, contains no such language. Therefore, the plain meaning of the statute allows for derivative works to be treated as separate works for purposes other than for the calculation of statutory damages. *See e.g. Data General Corporation v. Grumman Systems*

*Support Corporation*, 795 F.Supp. 501 (D. Mass 1992). *See also David & Goliath Builders, Inc. v. Elliott Construction, Inc.*, No. 05-C-494-C, 2006 WL 1515618 at *7 (W.D. Wis. May 25, 2006)(holding that attorney fees were not barred by §412 because the plaintiff failed to register the derivative work only because it was the plaintiff's *underlying* copyrights that were the basis for the infringement suit, not the derivative promotional materials); *but see Liu v. Price Waterhouse LLP,* 182 F.Supp.2d 666, 675-76 (N.D. Ill. 2001) (when scope of the derivative work license is exceeded by the registration of a new copyright, the holder of the original copyright may proceed with infringement suit).

The analysis of statutory construction, coupled with the Sixth Circuit's rule that separate registration for derivative works is a jurisdictional prerequisite to bringing a copyright infringement suit based on that derivative work, is enough to convince the court of the following: when an infringement suit is based on a derivative work, the applicability of §412 to a request for attorney fees under §505 should turn on the analysis of the effective date of the registration of that separate *derivative work* and not the underlying copyright.

The court is not persuaded that the analysis regarding the effective date of the copyright registration in the previous order should be changed to reflect the underlying copyright registration date versus the copyright registration date of the derivative work.  The derivative work was the only song the Bureau infringed.  The parties agreed before and during trial

21

that copyright Pau2-485-026, the derivative work, was at the heart of the case and served as the basis for the infringement suit.  The Copyright Act is clear that registration is a prereq- uisite to the award of attorney fees.  Because Janky did not register the derivative work within the time frame allowable under the Copyright Act, the award of attorney fees under §505 is barred. Janky, in her motion for reconsideration, has not per- suaded the court with any analysis or case law to prove manifest error of the law, nor has she provided any relevant arguments that could not have been made before the court rendered its decision.

Further, because uncertainty existed regarding the date of copyright registration in relation to the applicability of §412, this court, in its previous order, undertook the discretionary analysis under §505 and looked to a set of nonexclusive factors to guide its determination of whether the award of attorney fees and costs were appropriate under the circumstances.  "However, in light of questions regarding these dates, the court notes that even if it were possible to resolve the questions over publica- tion and registration in Janky's favor, consideration of the discretionary factors lead to the conclusion that fees are not warranted in this matter." (Op. and Ord. Aug. 20, 2007, p. 10) Janky flatly misstates the record when she states that the court "relies *exclusively* on the factor of 'the amount of damages and other relief that Janky obtained' . . . as mitigating and alto- gether precluding any attorney fee award." (emphasis added) (Mot.

for Reconsideration, p. 2).  The order clearly discusses factors
such as frivolousness, motivation, objective unreasonableness
(both in the factual and in the legal components of the case),
and the need in particular circumstances to advance consideration
of compensation and deterrence as are set out in *Gonzales v.
Transfer Technologies, Inc.,* 301 F.3d 608 (7th Cir. 2002) (*citing
Fogerty v. Fantasy, Inc.,* 510 U.S. 517, 535 n.19, 114 S.Ct. 1023,
1033 n.19, 127 L.Ed.2d 455 (1994)) and expanded in *Assessment
Technologies of WI, LLC v. WIREdata, Inc.,* 361 F.3d 434, 436 (7th
Cir. 2004).  The court did not rely exclusively on the factor of
damages in its decision.  Looking at the course of litigation
throughout this case as a whole and applying the appropriate
factors, this court determined, in its discretion, that the award
of attorney fees to Janky under §505  was not warranted.

The rest of Janky's argument in her motion merely rehashes
prior arguments and theories and warrants no further discussion.
As for her assertion that the court deemed the transfer between
Janky and Henry Farag an "implied license" thereby creating a
"transfer, lending, lease or lending of a property interest," the
Bureau is correct in stating that had such an implied license
been determined during trial, infringement would have been pre-
cluded and Janky would not have been entitled to attorney fees.
Contrary to Janky's assertions, the court determined that while
infringement had occurred, the question of *whether* an implied
license had been created, and if it had been created the question
of the scope of such license, was left to the trier of fact and

23

was not decided on summary judgment.  Janky's argument misses the
mark on the issue of the implied license somehow conferring a
right to attorney fees.  Based on the discussion above and
considering that she has presented no new evidence nor has made
any argument that could not have been made before the court
rendered its prior decision, Janky's Motion for Reconsideration
is **DENIED.**

Little further discussion is necessary to address Janky's
final request. She asks for a Supplemental Findings of Fact in
her Motion for Reconsideration.  The court notes that Janky once
again has failed to follow the district court's local rules in
seeking two distinct forms of relief.  See L.R. 7.1(b) ("Each
motion shall be separate.").  Although Janky does not quote the
applicable legal standard or cite to a single case regarding the
standard, Janky's motion proceeds to request the "honorable court
make an equitable supplemental finding of 'willful' infringement,
reopen the proofs in the equitable portion of the case in order
that testimony may be accepted concerning equitable relief and
actual knowledge of willful infringing activity on the part of
Batistatos." (DE-343-1).  Janky asserts that this is supported by
"testimony that the Defendant had procured a verbal license 'in
perpetuity,' as opposed to an outright purchase, and notified
their attorney of same." (Mot. for Reconsideration, p. 3)  Janky
does not provide reference to this testimony in context nor does
she attach such testimony as an exhibit.

"It is well-established that the trial court has a large

24

discretion with respect to order of proof and permitting a party to reopen its case after it has rested." *Filipowicz v. American Stores Ben. Plans Committee* 56 F.3d 807, 814 (7th Cir. 1995) ("[T]he district court has wide discretion in deciding whether to allow a party to reopen proofs after the close of evidence."); *Rhyne v. U.S.*, 407 F.2d 657, 661 (7th Cir. 1969) (citations omitted).

Apart from the fact that Janky has not provided reference to the testimony in a quotation or as an exhibit and has not provided any analysis concerning the legal standard, reopening proofs and admitting a supplemental finding of willful infringement is not appropriate in this instance.  As the Bureau points out in its response, Janky elected to pursue actual damages over statutory damages and willfulness when discussing the correct jury instruction with Judge Cherry. (DE-344-1)  Janky had ample time to argue willfulness and her theory that Batistatos' "constructive knowledge" led to a "possibility of infringement" during the trial.  Janky did not do so, and the court refuses to accept additional evidence at this time for such a purpose.  The court also declines to make willful infringement a supplemental finding of fact.  Therefore, Janky's Motion for Supplemental Findings of Fact is **DENIED**.

————————————

For the foregoing reasons, the Motion for Fees and Costs for Having to Defend Against Defendant's Motion for Attorney Fees

Pursuant to 28 U.S.C. §1927 Fees filed by the plaintiff, Cheryl Janky, on August 10, 2007 (DE 326); the Second Motion for Costs and Attorney Fees Pursuant to Federal Rule of Civil Procedure 11 filed by the defendant, Lake County Convention & Visitors Bureau, on November 1, 2007 (DE 354); and the Motion for Reconsideration of the Court's August 20, 2007 Order filed by the plaintiff on September 4, 2007 (DE 343) are **DENIED.**

ENTERED this 7th day of February, 2008

s/ ANDREW P. RODOVICH
United States Magistrate Judge

26